UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DOMINIQUE DANIELS,<br><br>            Plaintiff,<br><br>      v.<br><br>KAISER FOUNDATION HOSPITALS; CESAR AGUDA; ANDREA CAMPBELL; CELINE FLORES, ARSINEH KHACHEKIAN DO; WAYNE-BO-STEIN LIN; JOSE ALOMIAS RUIZ; SASHIKANTH SATHAS; BRIEANNA THOMAS; and Does 1–10,<br><br>            Defendants. | Case No.: SACV 24-00022-CJC (JDEx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT [Dkt. 21] |

## I.     INTRODUCTION

In this case, *pro se* Plaintiff Dominique Daniels alleges that Defendants Kaiser Foundation Hospitals and several of its employees did not treat her properly during two

hospital visits. (*See* Dkt. 1 [Compl.].) In addition to Kaiser, Plaintiff names as individual defendants Cesar Aguda, Andrea Campbell, Celine Flores, Arsineh Khachekian Do, Wayne-Bo-Stein Lin, Jose Alomias Ruiz, Sashikanth Sathas, and Brieanna Thomas (collectively the "Provider Defendants"), but she does not identify the positions these individuals held at Kaiser's facilities. Now before the Court is Defendants' motion to dismiss the Complaint. (*See* Dkt. 21 [hereinafter "Mot."]). For the following reasons, Defendants' motion is **GRANTED**.[1]

## II.    FACTS

This case concerns two visits Plaintiff made to Kaiser hospital facilities: the first hospitalization began on November 28, 2022 at Kaiser's Downey Location (the "Downey Hospitalization"), and the second visit occurred on March 7, 2023 at Kaiser's Anaheim Emergency Department (the "Anaheim ED Visit").

### A. The Downey Hospitalization

On November 28, 2022, Plaintiff went to Kaiser's emergency department in Downey, California and requested care for "her emergency health/medical conditions," including "e.g., fatigue; shortness of breath; numbness/weakness in hands, legs, feet; chest pain and tightness; body aches; elevated and abnormal Troponin levels; abnormal blood levels; elevated and abnormal Creatine Phosphokinase levels up to 3,047; elevated and abnormal blood pressure up to 190/110; abnormal red/white blood count; inflammation and swelling in body." (Compl. ¶ 19.) Plaintiff does not explain what led her to believe she had, for example, emergency abnormal creatinine or troponin levels prior to going to the emergency department, but she alleges that Kaiser, Do, Ruiz, and

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 6, 2024 at 1:30 p.m. is hereby vacated and off calendar.

Lin knew or should have known about her health history and that she was suffering from emergency medical conditions. (*See id.*) Allegedly Do told Plaintiff "in an intimidating and coercive manner" that she would not admit Plaintiff to the hospital and that she would have to wait to see her rheumatologist—Lin—at an upcoming scheduled appointment. (*See id.* ¶ 20.) Plaintiff complained, and she concludes now that "Do intentionally retaliated and discriminated against [her] … [and] did not provide … Plaintiff with any examination … during Plaintiff's entire time at the emergency room or hospital, and did not inform Plaintiff about her lab results." (*Id.* ¶ 22.) "Do did not offer Plaintiff oxygen, pain or blood pressure medication, or IV fluids for her medical or health conditions." (*Id.* ¶ 23.)

Despite Plaintiff's allegations that Do stated she would not admit Plaintiff to the hospital, Plaintiff alleges she was still "admitted to the hospital" but "in bad faith and with no intention of provide treatment … to stabilize Plaintiff's emergency medical … conditions …." (*Id.* ¶ 26.) Because Plaintiff was unable to attend her scheduled rheumatology appointment while in the hospital, Lin visited Plaintiff in the emergency department. (*See id.* ¶ 27.) During this visit, Lin "told Plaintiff that she was diagnosed with chronic rheumatic illnesses. Defendant Lin then asked Plaintiff if she believed in God and Christianity and if she had a religion. Plaintiff told Defendant Lin that she did not have a religion and complained to him that his religion questions were inappropriate and irrelevant to her health conditions and reasons for going to the emergency room for medical care and treatment." (*Id.*) This upset Lin, who then "in an intimidating and forceful manner" commented that it was amazing how God put Plaintiff in her current medical condition to in order to bring Plaintiff closer to him. (*Id.* ¶ 28.) Lin then handed Plaintiff a Bible, demanded that she read it, grabbed her hand, and began to pray. (*See id.*) Plaintiff reported Lin's conduct to Ruiz.

On November 30, 2022, Lin visited again and asked Plaintiff if she had read the Bible he gave her the day before. (*See id.* ¶ 30.) Plaintiff reported she had not. (*See id.*) Plaintiff alleges that Lin "then told Plaintiff that he was going to order a … biopsy requiring Plaintiff's leg and muscle to be cut open which Plaintiff refused." (*Id.*) Plaintiff believed this biopsy to be medically unnecessary and perceived Lin's motivation to be retaliatory. (*See id.*) Around this time, Plaintiff also reported to Ruiz, Flores, Campbell and other medical staff that her providers were

> not properly monitoring her IV and caused her arm to hurt, bleed, swell, and infiltrate; that a medical doctor did not check on her and her medical condition for long periods of time; that the medical staff inappropriately removed her IV and IV fluids and medication for hours and for an unreasonable amount of time; that the medical staff improperly and repeatedly failed to inset a needle to withdraw blood from her arm, during which the medical staff showed a lack of training and the ability to safely and properly withdraw Plaintiff's blood and caused her unnecessary and preventable pain, bruises, scared tissue, and Gallops veins, and that the medical staff was providing her poor medical treatment.

(*Id.* ¶ 35.)

Also in an alleged act of retaliation, Campbell "came to Plaintiff's room in an upset, intimidating, forceful, threatening, and offensive manner; and repeatedly, unsuccessfully, and without Plaintiff's consent; used her hands and grabbed Plaintiff's left arm and poked Plaintiff with catheter needle in that arm as Plaintiff resisted and pulled away, and forcefully ripped off medical tape from Plaintiffs left arm." (*Id.* ¶ 36.) Flores then informed Plaintiff that she was being discharged over her objection because of her complaints. (*See id.* ¶ 38.) Plaintiff reports she was discharged from the hospital on December 1, 2022 against her will, despite allegedly still suffering from various medical issues. (*See id.* ¶ 39.) However, Plaintiff also contradictorily alleges that she was discharged against her will on December 3, 2022. (*See id.* ¶ 41.) Because of this allegedly premature discharge, Plaintiff again had to go to the emergency room in

Anaheim and was admitted from December 10, 2022 through December 17, 2022. (*See id.* ¶ 42.)

**B. The Anaheim ED Visit**

On March 7, 2023, Plaintiff went to the Kaiser Anaheim emergency department, where she encountered Defendants Aguda, Thomas, and Sathas, "because she was suffering from severe, intolerable, and uncontrolled abdominal pain and vomiting, fatigue, and short[ness] of breath." (*Id.* ¶ 48.) Kaiser's medical staff did not provide her immediate care, and like most individuals who present at the emergency room, Plaintiff sat in the waiting room for about forty-five minutes while "panicking, crying, yelling, and begging for pain medication …." (*Id.*) Aguda "repeatedly and unsuccessfully attempted to insert an IV catheter in Plaintiff's arm and withdraw her blood" and "threatened to call security if [Plaintiff] did not sit still and stop yelling …." (*Id.* ¶ 49.) When Plaintiff "resisted and told Aguda not to poke her with the IV catheter again, … Aguda … grabbed and pulled Plaintiff's arm with his hands, told Plaintiff to be still, and demanded and unsuccessfully inserted the IV catheter in Plaintiff's arm again." (*Id.* ¶ 50.)

During this ED visit, Plaintiff asked for assistance using the restroom. (*See id.* ¶ 53.) Thomas proposed the use of a vaginal catheter but provided Plaintiff a portable toilet after Plaintiff refused the catheter. (*See id.*) "Because the portable toilet was too low for Plaintiff to use, she asked Thomas to lift the portable toilet which she did in angry manner telling Plaintiff that she did not want to break her nails." (*Id.*) Thomas then broke a nail while assisting Plaintiff and blamed Plaintiff in an intimidating manner. (*See id.*) Thomas refused to provide Plaintiff further care. (*See id.*) Plaintiff alleges that another nurse, Sathas, "intentionally and negligently ignored and failed to monitor or properly monitor [Plaintiff's] IV catheter" and care. (*See id.* ¶ 54.) Plaintiff purportedly suffered emotional and physical harm from these interactions. (*See id.* ¶ 56.)

"Plaintiff reviewed the information documented in her medical records relating to the incidents giving rise to this lawsuit, and noticed and discovered that the records contain false, altered, incomplete, inadequate medical records and information, and/or bad faith or unreasonable delayed addendums." (*Id.* ¶ 60.)

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. DISCUSSION

Plaintiff asserts claims for violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), the Unruh Civil Rights Act, the California Health and

Safety Code, and the Tom Bane Civil Rights Act, as well as claims for assault, battery, and negligence. (*See* Compl.) Defendants move to dismiss the Complaint in its entirety.

### A. Failure to Provide Appropriate Medical Screening or Treatment

Plaintiff's first cause of action alleges that Defendants Kaiser, Lin, Ruiz, and Do failed to provide appropriate screening and care under the EMTALA and California Health and Safety Code § 1317. (*See* Compl. ¶¶ 61–65.) "42 U.S.C. § 1395dd(a) provides that if any individual comes to the emergency department of a hospital which participates in Medicare, and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital 'must provide for an appropriate medical screening examination within the capability of the hospital's emergency department … to determine whether or not an emergency medical condition ... exists.'" *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255–56 (9th Cir. 1995). If *the hospital* determines "that the individual has an emergency medical condition, the hospital must provide either—(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section." 42 U.S.C. § 1395dd(b). An "emergency medical condition" is one "manifesting itself by acute symptoms of sufficient severity (including severe pain) such that in the absence of immediate medical attention could reasonably be expected to result in – (i) the placing of the health of the individual…in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part …." 42 U.S.C. § 1395dd(e). "The plain text of the EMTALA explicitly limits a private right of action to the participating hospital." *Eberhardt*, 62 F.3d at 1256. California Health and Safety Code § 1317 ("Section 1317") is "California's version of 42 U.S.C. § 1395dd [(the EMTALA)]," *Shah v. Drew Chain Sec. Corp.*, 2023

WL 2628695, at *6 (C.D. Cal. Jan. 13, 2023), and establishes similar requirements as to California hospitals.

As a threshold matter, Plaintiff's EMTALA claim against the Provider Defendants must be dismissed because the EMTALA establishes a cause of action only against hospitals, not individual staff members. *See Eberhardt*, 62 F.3d at 1256.

Plaintiff's EMTALA claim against Kaiser and her Section 1317 claim must also be dismissed. Significantly, "[a]s the text of the [EMTALA] statute clearly states, the hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency medical condition." *Id.* at 1253. Its transfer and discharge restrictions "apply only when an individual 'comes to the emergency room,' and after 'an appropriate medical screening examination,' the hospital determines that the individual has an emergency medical condition.'" *James v. Sunrise Hosp.*, 86 F.3d 885, 889 (9th Cir. 1996). Section 1317 similarly requires that the relevant providers must first have determined that the patient was suffering from an emergency medical condition. *See* Cal. Health & Safety Code § 1317.1(a)(1). Plaintiff has not alleged that Defendants determined she presented with emergency medical conditions during either of her emergency department visits. In fact, Plaintiff's allegations indicate that Kaiser's staff did not believe she was suffering from a medical emergency and instead should wait for her regularly scheduled rheumatology appointment. These allegations cannot sustain an EMTALA claim or a Section 1317 claim for failure to treat an emergency medical condition.

Moreover, Plaintiff does not plausibly allege that Defendants failed to provide the required screening. Plaintiff's nearly weeklong admission during the Downey Hospitalization belies any assertion that she was not screened sufficiently under the EMTALA. And Plaintiff alleges that during the Anaheim ED Visit, her blood was

drawn, and an IV catheter was inserted. These allegations indicate that Defendants performed a screening, and Plaintiff does not plausibly allege any facts otherwise aside from conclusory statements claiming she did not receive proper screenings.[2]

**B. Discrimination**

Plaintiff's second cause of action alleges that Defendants Kaiser, Lin, Ruiz, and Do discriminated against her in violation of California's Unruh Act and Section 1317. (*See* Compl. ¶¶ 66–70.) The Unruh Act provides that "[a]ll persons … are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). In other words, it "prohibits intentional discrimination in access to public accommodations." *Brown v. Smith*, 55 Cal. App. 4th 767, 786–87 (1997). "Unruh Act claims include the following elements: (i) defendant denied plaintiff full and equal accommodations, advantages, facilities, privileges, or services; (ii) that a substantial motivating reason for defendant's conduct was plaintiff's membership in a protected class; (iii) that plaintiff was harmed; and (iv) that defendant's conduct was a substantial factor in causing plaintiff's harm." *Nia v. Bank of Am., N.A.*, 603 F. Supp. 3d 894, 906 (S.D. Cal. 2022).

Section 1317 correspondingly "provides that "[i]n no event shall the provision of emergency services and care be based upon, or affected by, the person's ethnicity,

---

[2] If Plaintiff intended to allege her screen was subpar, she has also not met the pleading standard. *See, e.g., Shah v. Drew Chain Sec. Corp.*, 2023 WL 2628695, at *5 (C.D. Cal. Jan. 13, 2023) ("However, negligence in the screening process or the provision of a merely faulty screening, as opposed to refusing to screen or disparate screening, does not violate EMTALA ….").

citizenship, age, preexisting medical condition, insurance status, economic status, ability to pay for medical services," or any other protected characteristic defined in the Unruh Act, "except to the extent that a circumstance such as age, sex, preexisting medical condition, or physical or mental disability is medically significant to the provision of appropriate medical care to the patient." *See* Cal. Health & Safety Code § 1317(b).

Plaintiff "inadequately alleges that [she] was discriminated against with respect to similarly situated individuals, and, as such, [she] does not establish the discrimination alleged was intentional either." *Shah v. Drew Chain Sec. Corp.*, 2023 WL 2628695, at *7 (C.D. Cal. Jan. 13, 2023). The closest Plaintiff comes is her allegation that Lin attempted to order a biopsy that *Plaintiff believed* was medically unnecessary due to her lack of religious affiliation. However, Plaintiff does not plausibly allege that the procedure was actually medically unnecessary or that Lin would not have ordered the biopsy for other similarly situated patients. This is true generally—it is not at all clear how Plaintiff's treatment differed from the care others would have received when presenting with her symptoms. Moreover, Plaintiff lumps all Defendants together and does not identify which acts she believes individual Defendants took due to discrimination. "As a general rule, when a pleading fails 'to allege what role each Defendant played in the alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.'" *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015). "[A] complaint which 'lump[s] together ... multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'" *Id.* She also fails to identify which protected class she believes is implicated in each alleged incident. For a multitude of reasons, Plaintiff has failed to plausibly allege discrimination under either statute.

**C. Retaliation**

Plaintiff's third cause of action alleges that Defendants Kaiser, Lin, Ruiz, Do, Campbell, and Flores retaliated against her in violation of California Health and Safety Code § 1278 ("Section 1278") and the EMTALA by discharging her from the hospital, providing poor medical care, assaulting her, discontinuing her medications, and ordering an unnecessary surgery. (*See* Compl. ¶¶ 71–75.) Plaintiff's retaliation claim pursuant to the EMTALA, like her other EMTALA claims above, requires that the hospital find the presenting patient to be suffering from an emergency medical condition. *See* 42 U.S.C. § 1395dd. The Court has already concluded that Plaintiff has not plausibly pled Kaiser's providers made any such determination.

Section 1278 provides that "[a] health *facility* shall not discriminate or retaliate … against a patient … because that person has … presented a grievance, complaint, or report to the facility." Cal. Health & Safety Code § 1278.5(b)(1)(A) (emphasis added). "[T]o establish a prima facie case under section 1278.5, a plaintiff must show that he or she (1) presented a grievance, complaint, or report to the hospital or medical staff (2) regarding the quality of patient care and (3) the hospital retaliated against him or her for doing so." *Faulkner v. Lucile Salter Packard Children's Hosp. at Stanford*, 2023 WL 2351651, at *2 (N.D. Cal. Mar. 3, 2023). "[S]ection 1278.5 does *not* allow individual doctors to be sued—even if their motives are not honorable, as alleged by [Plaintiff] here." *Armin v. Riverside Cmty. Hosp.*, 5 Cal. App. 5th 810, 832 (2016), *as modified* (Dec. 15, 2016).

Again, Plaintiff's Section 1278 claim against the Provider Defendants must be dismissed because this provision does not create a cause of action against individual medical providers. *See id.* As to the merits of her claim against Kaiser, that is a closer call accepting Plaintiff's allegations as true, as the Court must do at this stage. Kaiser

argues that Plaintiff's claim is not actionable because she does not allege that she made any written complaints or formal complaints to hospital directors. (*See* Mot. at 19.) Kaiser does not cite any authority supporting this interpretation of Section 1278.5, which on its text authorizes claims for retaliation when patients complain to medical staff. *See* Cal. Health & Safety Code § 1278.5(b)(1)(A). The one case Kaiser cites, *Valente-Hook v. Eastern Plumas Health Care*, 368 F.Supp.2d 1084 (E.D. Cal. 2005), dealt with an employee's claim against her hospital-employer. In that case, the court held that the plaintiff's claim could not survive summary judgment because although she had expressed general dissatisfaction that the hospital did not place bed alarms in patient rooms, she had never reported that concern to any hospital authorities, and therefore, the hospital—without knowledge of her whistleblowing activity—could have retaliated against her. (*See id.* at 1102.) Plaintiff's case is different because she reported her dissatisfaction to medical staff at the hospital, who she claims then acted against her based on those complaints.

However, Plaintiff does not adequately allege that any actions were taken against her in retaliation. For instance, she alleges that Lin ordered a biopsy of her leg that she believed was medically unnecessary because she was not religious, but that biopsy never actually occurred. Plaintiff also does not adequately address how or why the biopsy was unnecessary and that it would not have been ordered for any patient presenting with similar symptoms. Similarly, Plaintiff generally alleges that she was discharged and had medication discontinued in retaliation for her complaints, but she does not address why these decisions were not the same decisions that would have been made for any other similarly situated patient. Under this cause of action, Plaintiff also fails to attribute any particular actions to individual Defendants and makes only generally allegations regarding retaliation because of her dissatisfaction that fail to put Kaiser on notice of the facts underlying this claim.

### D. Assault and Battery

Plaintiff's fourth cause of action alleges that Defendants Kaiser, Campbell, and Aguda committed the intentional torts of assault and battery. (*See* Compl. ¶¶ 76–80.) First, Plaintiff alleges that Campbell "forcefully ripped off medical tape from Plaintiff's arm," that Plaintiff "was upset," and that Campbell acted in an intentionally offensive and forceful manner. (Compl. ¶ 79.) Second, Plaintiff alleges that Aguda "was hurting her as he made multiple failed attempts to insert an IV catheter in Plaintiff's arm and withdraw her blood," then "became upset, and in an intimidating and offensive manner grabbed and pulled Plaintiff's arm with his hands, told Plaintiff to be still, and inserted the IV catheter in Plaintiff's arm again …." (*Id.* ¶ 80.)

"The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; (4) a reasonable person in plaintiff's position would have been offended by the touching." *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013). "The essential elements of a cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *Id.* at 668–69.

Plaintiff's allegations are too conclusory to establish either assault or battery. Plaintiff does not make any allegations against Kaiser. Taking Plaintiff's pleaded facts as true but ignoring her conclusory statements, the Court must dismiss these claims against

Campbell and Aguda as well. "[A] touching or other contact in a courteous or merely causal manner for a legitimate purpose or one unavoidably made is no wrong. Thus, it is not a battery to touch another for the purpose of attracting his attention, nor to grasp another by the hand or arm as a gesture of friendship. These are usual and common customs and therefore, are ordinarily not offensive to a normal person." *Barouh v. Haberman*, 26 Cal.App.4th 40, 46, n.5 (1994). The same can be said for actions taken necessary to the practice of medicine. Plaintiff asserts in only a conclusory manner that Defendants' actions were offensive, but she does not plead any facts to support the conclusion that their actions were not "merely causal"—in other words, that the force used was more than was necessary to perform medical procedures for Plaintiff while she was in the hospital. *Id.* For example, both removing medical tape and inserting an IV catheter require some degree of force and are often somewhat painful. That does not mean every such medical procedure constitutes assault and battery. Plaintiff does not explain what about Defendants' actions would have been offensive or overly forceful to a reasonable person, and the Court cannot accept legal conclusions as true.

### E. Threat and Intimidation

Plaintiff's fifth cause of action asserts a claim against Defendants Do, Lin, Campbell, and Flores under the Bane Act. (*See* Compl. ¶¶ 81–84.) "The Bane Act permits an individual to pursue a civil action for damages where another person 'interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of this State.'" *King v. State of California*, 242 Cal. App. 4th 265, 294 (2015). "Speech alone is not sufficient to support an action …, except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against

them or their property and that the person threatening violence had the apparent ability to carry out the threat." *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1290 (2017), *as modified* (Apr. 18, 2017). "[T]here must be violence or intimidation by threat of violence, and the violence or threatened violence must be due to plaintiff's membership in a group protected by constitution or statute from hate crimes." *Cabesuela v. Browning-Ferris Indus. of California, Inc.*, 68 Cal. App. 4th 101, 104 (1998).

As with her other claims, Plaintiff here too fails to allege which acts she believe give rise to this cause of action and to identify each Defendant's role in allegedly violating the Bane Act. She also fails to plead which acts she believed to be violent or to threaten violence and which protected class she is part of that subjected her to alleged hate crimes. She alleges only generally that each of these Defendants discriminated and retaliated against her through inappropriate discharge, subjected her to assault and battery, and ordered unnecessary medical treatment in violation of her rights. This is far too conclusory to meet Rule 8's pleading standard. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015).

### F. Medical Negligence

Plaintiff's final and sixth cause of action against Defendants Kaiser, Aguda, Thomas, and Sathas asserts a claim for professional negligence, i.e. medical malpractice. "The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015). Acts constituting professional negligence must be "within the scope of services for which the provider is licensed …." *Arroyo v. Plosay*, 225 Cal. App. 4th 279, 297 (2014).

Plaintiff's complaint lacks a factual basis to support these negligence claims. For one, Plaintiff nowhere identifies the positions that any of these Provider Defendants hold, so it is impossible for the Court to determine whether any actions taken were within the scope of each provider's licensed services. *See id.* Additionally, Plaintiff does not state which actions each Defendant took that allegedly violated their professional duties of care or the particular injury Plaintiff suffered from each Defendant's actions.

### G. Leave to Amend

"The court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Because Plaintiff has not previously amended her complaint, and it is possible that Plaintiff may be able to remedy some of the pleading deficiencies identified in this Order and in Defendants' briefing, amendment at this stage would not necessarily be futile and must be granted.

### V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. If Plaintiff wishes to file an amended complaint, she must do so by **May 3, 2024.** If

Plaintiff does not timely file an amended complaint, this action shall be dismissed with prejudice.

DATED: April 19, 2024

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE