```
F I L E D
CLERK, U.S. DISTRICT COURT

05/03/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IGU _____ DEPUTY
```

Dominique Daniels
1907 N. Keene Ave.,
Los Angeles, California 90059
ddaniels34@toromail.csudh.edu

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dominique Daniels,<br><br>       Plaintiff,<br><br>  vs.<br><br>KAISER FOUNDATION HOSPITALS;<br>Cesar Aguda; Andrea Campbell;<br>Celine Flores; Arsineh Khachekian Do;<br>Wayne-Bo-Stein Lin; Jose Alomias Ruiz;<br>Sashikanth Sathas; Brieanna Thomas,<br>Does 1-10, inclusive,<br><br>       Defendant(s). | Case No.: 8:24-cv-00022-CJC-(JDEx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. **EMTALA, 42 U.S.C. § 1395dd;**<br>2. **Discrimination in Violation of The Unruh Civil Rights Act, Cal. Civ. Code § 51(b); California Disabled Persons Act, Cal. Civ. Code § 54; Cal. Health & Safety Code § 1317 and § 1278.5;**<br>3. **Retaliation in Violation of Cal. Health & Safety Code § 1278.5; & 42 U.S.C. § 1395dd;**<br>4. **Assault & Battery, Cal. Code Civ. P. § 335.1 et seq., Cal. Civ. Code § 43, and Rest. (2d) of Torts § 13;**<br>5. **Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 et seq;**<br>6. **Negligence, Cal. Civ. Code §§ 1714 & 2338 and Rest. (3d) of Torts § 14**<br><br>**[DEMAND FOR JURY TRIAL]** |

Comes now Plaintiff, Dominique Daniels ("Plaintiff") for her First Amended Complaint for Damages against Defendants KAISER FOUNDATION HOSPITALS; Cesar Aguda; Andrea Campbell; Celine Flores; Arsineh Khachekian Do; Wayne-Bo-Stein Lin; Jose Alomias Ruiz; Sashikanth Sathas; Brieanna Thomas, and Does 1-10, inclusive, (collectively, "Defendants") and alleges as follows:

## JURISDICTION

1.     This court has jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state actions under 28 U.S.C. § 1367.  Federal question jurisdiction arises pursuant to 42 U.S.C. § 1395dd and 42 C.F.R. § 489.24 et seq.

## VENUE

**2.**     Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants business and the unlawful acts were committed within the jurisdiction of the United States District Court for the Central District of California.

3.     All conditions precedent to bringing this action, if any, have been executed, satisfied, or waived.

## THE PARTIES

4.     At all times mentioned herein, Plaintiff Dominique Daniels (hereafter, "Plaintiff") was an individual or person whose address is 1907 N. Keene Ave., Los Angeles, CA 90059, and an individual or person with physical disabilities.

5.     Plaintiff is informed and believes and thereon alleges that Defendant KAISER FOUNDATION HOSPITALS (hereafter, "KFH") is, and at all times mentioned in this Complaint entered into a Medicare agreement and was, California Corporation, health facility that owns and operated an emergency department and health facility, medical provider, participating hospital, place of public accommodation, entity, principal, person, or business establishment

FIRST AMENDED COMPLAINT FOR DAMAGES

authorized to do business in the State of California with offices in Orange County, California and Los Angeles County, California.

6.      Plaintiff is informed and believes and thereon alleges that Defendant Cesar Aguda (hereafter, "AGUDA") was or may have been acting as an individual, a person, a California Corporation, a health facility, a participating hospital, a registered nurse or licensed registered nurse, a medical staff, and as an operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Orange County, California.

7.      Plaintiff is informed and believes and thereon alleges that Defendant Andrea Campbell (hereafter, "CAMPBELL") was or may have been acting as an individual, a person, a California Corporation, a health facility, a participating hospital, a registered nurse or licensed registered nurse, a medical staff, and as a n operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Los Angeles County, California.

8.      Plaintiff is informed and believes and thereon alleges that Defendant Celine Flores; (hereafter, "FLORES") was or may have been acting as an individual,  a person, a California Corporation, a health facility, a participating hospital, a registered nurse, a medical staff, and as an operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Los Angeles County, California.

9.      Plaintiff is informed and believes and thereon alleges that Defendant Arsineh Khachekian Do (hereafter, "DO") was or may have been acting as an individual, a person, a California Corporation, a health facility, a participating hospital, a medical doctor or licensed physician, a medical staff, and as an

FIRST AMENDED COMPLAINT FOR DAMAGES

operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Los Angeles County, California.

10.     Plaintiff is informed and believes and thereon alleges that Defendant Wayne-Bo-Stein Lin (hereafter, "LIN") was or may have been acting as an individual,  a person,  a California Corporation, a health facility, a participating hospital, a medical doctor or licensed physician, a medical staff, and as an operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Los Angeles County, California.

11.     Plaintiff is informed and believes and thereon alleges that Defendant Jose Alomias Ruiz (hereafter, "RUIZ") was or may have been acting as an individual,  a person,  a California Corporation, a health facility, a participating hospital, a medical doctor or licensed physician, a medical staff, and as an operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Los Angeles County, California.

12.     Plaintiff is informed and believes and thereon alleges that Defendant Sashikanth Sathas (hereafter, "SATHAS") was or may have been acting as an individual,  a person,  a California Corporation, a health facility, a participating hospital, a registered nurse or licensed registered nurse, a medical staff, and as an operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Orange County, California.

FIRST AMENDED COMPLAINT FOR DAMAGES

13.     Plaintiff is informed and believes and thereon alleges that Defendant Brieanna Thomas (hereafter, "THOMAS") was or may have been acting as an individual,  a person,  a California Corporation, a health facility, a participating hospital, a registered nurse or licensed registered nurse, a medical staff, and as an operator, maintainer, decision maker, servant, employee, manager, trustor, representative, officer, or person authorized to do business in the State of California, with, or on behalf of Defendant KFH, with offices in Orange County.

14.     Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff believes and thereon alleges that Defendant DOES 1 through 10, inclusive (hereafter, "DOES 1-10") is, and at all times mentioned in this Complaint was or may have been acting as an individual,  a person, a California Corporation, a health facility, a participating hospital, a medical provider with an agreement, a place of public accommodation, an entity, a doctor or licensed physician, a registered nurse or licensed registered nurse, a medical staff, and as an  operator, manager, maintainer, decision maker, servant, employee, employer, trustor, representative, officer, director, principal or co-conspirator, person, or business establishment authorized to do business in the State of California with offices in Orange County, California and Los Angeles County, California, and are in some manner responsible for or involved in the events and happenings alleged herein.

15.     Plaintiff is informed and/or believe and thereon alleges that at all times relevant herein, Defendants, and each of them was acting within the scope, course, authority, and purpose of such California Corporation, health facility, participating hospital, medical provider agreement, place of public accommodation, entity, doctor or licensed physician, registered nurse or licensed registered nurse, medical staff, operator, manager, maintainer, decision maker,

FIRST AMENDED COMPLAINT FOR DAMAGES

servant, employee, employer, trustor, representative, officer, director, principal or co-conspirator, person, or business establishment, performing work duties for, with, on behalf of, and/or under the guidance, instruction, authorization, instigation, ratification, assistance, supervision, management, incitement, encouragement, knowledge capacity, or conspiracy of Defendant KFH and/or each other.

16.     Plaintiff is further informed and/or believes and thereon alleges that each Defendant induced, collaborated, agreed with, authorized, instigated, encouraged, conspired, and/or otherwise participated in the events constituting the Complaint; and thus, is responsible in some manner for the events and happenings, and direct or proximately caused the injuries and damages as alleged herein.

17.     Where appearing herein, each and every reference to Defendants or to any of them, is intended to be and is a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

## STATEMENT OF FACTS RELATING TO CAUSES OF ACTION

18.     Plaintiff claims against all Defendants are done with standing and are filed within the statute of limitation under 42 U.S.C. § 1395dd(d)(2)(C) (within 2 years); Cal. Code Civ. P. § 335.1 & Cal. Civ. Code § 43 (within 2 years); Cal. Civ. Code § 51 (within three years);  Cal. Civ. Code § 52.1 (within two years); Cal. Civ. Code § 54.1 (within two to three years); Cal. Code of Civ. P. § 340.5 (within 1 year) for negligence).  At all times mentioned herein, Plaintiff was an individual or person with physical disabilities and chronic diseases and medical conditions as defined under 24 C.F.R. § 100.201(a) and Cal. Gov. Code § 12926(m), and she was/is affected without limitation to in her organs, immune, respiratory, and muscle

systems, and was/is limited with difficulty in and without limitations to her ability to breath, step, walk, stand, lift, carry, pull, bend, climb, and feel.  At all relevant times alleged herein, Defendant KFH is, or is believed to be, a health facility and a participating hospital that entered into a Medicare provider agreement.  At all relevant times alleged herein, Defendants DO, RUIZ, and LIN were, or is believed to have been a medical doctor or licensed physician doing business with, for, on behalf of, and with the authorization of Defendant KFH in the state of California.  At all relevant times alleged herein, Defendants AGUDA, CAMPBELL, FLORES, SATHAS, and THOMAS were, or is believed to have been a registered nurse or licensed registered nurse doing business with, for, on behalf of, and with the authorization of Defendant KFH in the state of California.

19.     On November 28, 2022, Plaintiff went to Defendants KFH, DO, RUIZ, LIN, FLORES, and CAMPBELL's emergency department in Downey, California, and requested medical care, examination, treatment, and stabilization for her emergency health/medical conditions and symptoms.  Plaintiff was suffering from and experiencing fatigue; shortness of breath; numbness, coldness, weakness, and discoloration in hands, legs, and feet; pain, tightness, fluttering, fast pounding, and skipping a beat in my heart/chest areas; body and muscle aches, cramps, stiffness, tightening, hardening, and weakness; the difficulties and at times the inability to move around or walk; swelling in her ankles, feet, legs, and body; swollen lymph nodes in her ear, shoulder, and neck areas; light headaches and blurred vision, high blood pressure, and elevated and abnormal Troponin and Creatine Phosphokinase levels.  Because of those serious health symptoms and conditions, and because Plaintiff's health symptoms and conditions were not under control or able to be controlled by Plaintiff, and because most of Plaintiff's health symptoms and conditions were acute, and because Plaintiff is competent and was aware of her history of chronic illnesses and flare ups, and because Plaintiff's

FIRST AMENDED COMPLAINT FOR DAMAGES

former primary care physician Dr. Suma Srinath had contacted and instructed her to immediately go to the emergency room because Plaintiff's lab results showed that her blood levels were unsafely elevated and abnormal, and because Doctor Srinath informed Plaintiff that Plaintiff's health conditions, symptoms, and lab results indicates that she hand unsafe thickening of blood in her body, that she was retaining fluid in her body and may have an infection or unidentified diseases, and that she was at risk to suffer blood clotting anywhere in her body and lungs, reduced blood flow, a heart attack or stroke, and because Plaintiff's pain and discomfort level was at a 10 out of 10 point scale, Plaintiff knew and was lead to reasonably believe that prior to going to the emergency room that her Troponin and Creatine Phosphokinase levels were unsafe and abnormal and that she had an emergency medical condition threatening serious injury, illness, and danger to her life.  At all times while Plaintiff was at the Downey emergency room during the incidents giving rise to this suit, Defendants KFH, DO, RUIZ, and LIN knew, or are believed to have reasonably known that Plaintiff was a patient with physical disabilities, preexisting chronic rheumatoid illnesses, and multiple and overlapping systemic autoimmune diseases.  At some point during Plaintiff's emergency room visit, Defendants KFH, DO, RUIZ, and LIN determined or learned that Plaintiff presented and was suffering from or had serious and emergency medical conditions but acted in bad faith and with intentional and deliberate indifferent to Plaintiff's serious and emergency medical conditions and physical disabilities, and denied, unreasonably delayed, and interfered or attempted to interfere with Plaintiff's right to emergency medical treatment, and inappropriately discharged her without stabilizing her emergency medical conditions and without providing her with sufficient, necessary, competent, or required medical examinations and treatment to stabilize her serious and emergency medical conditions.

//

FIRST AMENDED COMPLAINT FOR DAMAGES

20.     While Plaintiff was still in the emergency room, Defendant DO, in an intimidating and coercive manner, verbally told Plaintiff that she will not admit her to the hospital or provide her medical treatment for her serious medical conditions, and that Plaintiff was required to wait until she sees her Rheumatologist during a future appointment that was scheduled for or around November 29, 2022 in order to get medical treatment and service for the medical or health conditions. Defendant LIN was Plaintiff's Rheumatologist at the time.  Plaintiff makes it clear that she is not alleging or indicating that Defendant DO or other medical staff told her that she would not admit her to the hospital or provide her medical treatment because Defendant DO supposedly believe that Plaintiff had no emergency or serious medical condtion, instead, Plaintiff is alleging and indicating that Defendant DO acted in bad faith and with intentional and deliberate indifferent to Plaintiff's serious and emergency medical conditions and physical disabilities, and denied, delayed, and interfered or attempted to interfere with Plaintiff's right to receive emergency medical treatment, and inappropriately tried to discharged Plaintiff without stabilizing her emergency medical conditions and without providing her with sufficient, necessary, competent, or required medical examinations and treatment to stabilize her serious and emergency medical conditions.

21.     Plaintiff was shocked, stressed, and intimidated and complained to Defendant DO and a supervising doctor (can't recall his name at this time) for Defendant DO's unlawful and wrongfully conduct denying her medical care and treatment for her serious medical conditions at the emergency room and attempt to inappropriately discharge Plaintiff without stabilizing her serious health conditions. Defendant DO was aware of Plaintiff's complaint to that supervising doctor. Defendant DO attempt to violate Plaintiff's medical rights by attempted to discharge Plaintiff improperly and unreasonably from the emergency without first providing her with an appropriate or adequate medical examination, screening, or

treatment; by not and attempting not to stabilize Plaintiff's serious medical conditions before attempting to discharge Plaintiff from the emergency room; by not informing Plaintiff of DO's duty of care and the risks associated with the attempted discharge, and by not providing or attempting to provide a doctor's certification that the discharge would have outweigh the risks of the discharge or Plaintiff's health conditions.

22. For, or as a motivating reason for Plaintiff's physical disabilities, medical or preexisting medical conditions, and/or complaints to and about Defendant DO, and for Plaintiff exercising her right to seek emergency medical care and services for her serious medical conditions and symptoms, Defendant DO intentionally retaliated and discriminated against Plaintiff, ignored and acted with deliberate indifference with the purpose to ignore and not respond to Plaintiff's serious medical conditions, did not inform Plaintiff about any of her lab results, did not provide or attempt to provide Plaintiff with any visual or physical examination or inform her of her medical conditions or about the seriousness or risks of her health conditions during Plaintiff's entire time at the emergency room or hospital on November 28, 2022 through December 3, 2022, or provide Plaintiff with necessary or required room visits and observations.  Defendants DO and KFH denied Plaintiff full and equal privileges and services at Defendant KFH's emergency department or hospital.

23. Defendant DO provided Plaintiff with a discriminatory and different examination than she would have offered to other patients presenting similar emergency symptoms or health conditions like Plaintiff.  For example, Defendant DO did not offer or provide Plaintiff (1) with any oxygen or IV fluids, (2) with any steroids, pain, or blood pressure medication, (3) with any treatment options or physical or visible medical examinations or regular in person room visits, (4) EKG, or (5) with any discussion or questions about Plaintiff's serious medical conditions

FIRST AMENDED COMPLAINT FOR DAMAGES

or any possible treatment, all which were or are necessary and required to adequately treat and stabilize Plaintiff's serious and emergency medical conditions, and Defendant DO (6) ignored Plaintiff's lab test and results that were vital and relevant to Plaintiff's emergency medical conditions and symptoms. In contrast, Defendant DO would have provided or offered other patients presenting similar emergency health conditions like Plaintiff with oxygen to help them breath better or stabilize the breathing; with IV fluids to keep them hydrated or from being dehydrated; with steroids and other necessary medication to reduce and stabilize inflammation, pain, and high or unsafe blood pressure or levels in their body; with a physical and visible examination to check for possible signs of a stroke or weakness, mobility, swelling, or infection in their body, and to listen to their heart and lungs for possible signs or heart attack, respiratory distress or lung infection; and with frequent room visits and health discussion in order to check on and monitor the safety, wellbeing, and progress of the patient and their condition and health needs. As a motivating, substantial, or proximate reason for Defendant DO's negligent and discriminatory medical screening and conduct against Plaintiff, Defendants DO and KFH refused to provide and denied Plaintiff an immediate, actual, adequate, and/or reasonable medical care and treatment; Defendants DO and KFH did not adequately screen Plaintiff to determine if she had a serious or emergency medical condition but attempted to inappropriacy discharge Plaintiff without stabilizing her medical conditions; Defendant DO ignored Plaintiff's lab results and refused to treat or provide Plaintiff with an adequate medical screening when DO knew or reasonably should have known that Plaintiff and her lab results showed that Plaintiff was suffering from emergency health conditions and elevated, abnormal, unsafe, and/or life threatening blood, troponin, and creatine Phosphokinase levels, including abnormal red and white blood cells count and chronic inflammation and swelling in her body; Defendant DO failed to identify,

FIRST AMENDED COMPLAINT FOR DAMAGES

treat, and stabilize other serious and life threatening autoimmune diseases that Plaintiff had but was not aware of but was later informed of while receive emergency medical services at the Kaiser Anaheim hospital following Defendants inappropriate discharge; Defendants DO and KFH failed to follow or comply with their own EMTALA Medical Screening Examination procedures resulting in a reckless disregard and disparate treatment medical screening of Plaintiff and her serious health condition, and causing Plaintiff to suffer, without limitations to, shock, worsening medical conditions and body pain, panic and anxiety, higher blood pressure, increase in shorten breathing, increase in Troponin and Creatine Phosphokinase levels, and intimidation and fear.

24.     Defendant DO, by means of discrimination, retaliation, intimidation, and/or coercion, did, and attempted to intentionally violate, disregard, and/or infringe on Plaintiff rights in <u>Cal. Civ. Code § 51</u>; <u>Cal. Civ. Code § 51(b)</u>; <u>Cal. Civ. Code § 54.1</u>; <u>Health and Safety Code § 1317(b)</u>; <u>Health and Safety Code § 1278.5 (b)(1)(A)-(b)(2)</u>; <u>California Code of Regulation § 72527, § 73523, § 70707</u>, <u>United State Code 42 U.S.C.A. § 1395dd et seq.</u>; and the <u>Americans With Disability Act</u> ("ADA"), to receive or seek adequate emergency medical treatment, service, and stabilization free from discrimination, retaliation, and delay.  Defendant DO's conduct and statements discussed in paragraphs 20 through 23 above, were meant to intimidate and force or pressure Plaintiff to leave the emergency room and not seek emergency medical services and stabilization for her serious health conditions. Plaintiff was in fear and reasonably believed that her personal safety was or may have been at risk if she involuntarily left the emergency room without receiving adequate care and treatment necessary to stabilize her serious and life-threatening medical conditions and symptoms.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

25.     Defendant DO owed Plaintiff a reasonable duty of care, and purposely and negligently breached that duty by failing and refusing to engage in required and necessary conduct to determine if Plaintiff had an emergency medical condition; by failing or refusing to respond to and treat or stabilize Plaintiff's emergency medical conditions without delay and before discharging her from the hospital; by failing or refusing to provide Plaintiff medical services or treatment free from unlawful discrimination and retaliation; by denying and ignoring Plaintiff's request to receive an appropriate medical screening and examination for her serious emergency conditions; by failing and refusing to monitor Plaintiff and her health conditions; by failing and refusing to provide Plaintiff with any physical or visual examination; and by filing and refusing to adequately communicate with Plaintiff about her health conditions, progress, and medical treatment options.

26.     Following and only because of Plaintiff's complaints in paragraph 21, and in bad faith and with no actual intention on providing treatment or adequate treatment to stabilize Plaintiff's emergency medical or health conditions or symptoms, and to avoid civil liability, on November 28, 2022, Defendants admitted Plaintiff to the hospital, and she was informed that she was being admitted so for observation purposes.  Following further complaints and reports by Plaintiff to the Defendants and their medical staff about her poor medical care and treatment, on or around December 1, 2022, Defendants improperly discharged Plaintiff from the hospital without her consent and without providing Plaintiff with adequate and necessary medical care and treatment to stabilize her serious and emergency health conditions.  Plaintiff immediately reported and complained to Defendants and some of their administrative staff that the discharge was premature, unlawful, not safe to her health and wellbeing; that the discharge was being done for discriminatory and retaliatory purposes.  Plaintiff informed and warned Defendants RUIZ, KFH, FLORES, and some of their medical staff that she would file a complaint with the

FIRST AMENDED COMPLAINT FOR DAMAGES

medical board and pursue legal actions against them for violating her medical rights and subjecting her to harms by not treating and stabilizing her serious medical conditions before the discharge.  In bad faith and to avoid liability, and with no real intention on providing adequate treatment to stabilize Plaintiff's emergency medical or health conditions or symptoms, Defendants RUIZ and KFH then readmitted Plaintiff to the hospital on December 1, 2022, and told her that she will continue to be an observation patient.  As further alleged below, on December 3, 2022, and after more complaint and reports by Plaintiff to and against Defendants, Plaintiff was inappropriately, and prematurely discharged Plaintiff form their hospital a second time without stabilization of her serious and emergency medical conditions resulting in the worsening of Plaintiff's medical conditions and requiring her to go to Defendants Anaheim emergency room for emergency medical care and treatment.

27.     On or around November 29, 2022, Defendant LIN visited Plaintiff at Defendants KFH's Downey emergency department for her medical appointment. During the visit, Defendant LIN did not provide Plaintiff with any physical medical examination or inform her about any treatment plan or the extent or risk of her health conditions, instead, he simply told Plaintiff that she was diagnosed with chronic rheumatic illnesses.  Defendant LIN then asked Plaintiff if she believed in GOD and Christianity and if she had a religion.  Plaintiff told Defendant LIN that she did not have a religion (e.g. practicing atheism; agnosticism) and complained to him that his religion questions were inappropriate and irrelevant to her health conditions and reasons for going to the emergency room for medical care and treatment.

28.     Defendant LIN became upset and was or appeared to be angry in his facial expressions, and in an intimidating and forceful manner, LIN raised his voice and asked Plaintiff "isn't it amazing how GOD put" her in her medical condition in order to "bring" Plaintiff "closer to him," he handed and forced

FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff to take his bible and demanded that Plaintiff read his Christian bible, and tightly and forcefully grabbed Plaintiff's right hand and began to say a prayer. Plaintiff resistance, opposed, and rejected LIN's conduct and bible, and she repeatedly tried to pull away from LIN, but he refused to and did not let Plaintiff go and holing her against her will and by means of physical restraints. Defendant LIN's conduct and touching against Plaintiff was avoidable and was not done in a courteous or causal manner or for a legitimate or medical purpose or practice. LIN's actions and touching against Plaintiff was also unlawful, wrong, intentional, willful, intimidating, offensive, and violent to and against Plaintiff, and done without Plaintiff's request or consent. Defendant LIN's touching and conduct against Plaintiff was also an unlawful attempt with his present ability to commit violent acts or injury on Plaintiff. LIN's conduct against Plaintiff was also unreasonable and not necessary to perform or practice medicine on Plaintiff and done to intimidate and control Plaintiff's movement in order to force Plaintiff's to attend to and acceptance to his Christianity religion and to prevent Plaintiff from exercising her own religious beliefs and rights to seek medical services safely and free from bodily restraints, abuse, and harms.

29.   On or around November 30, 2022, Plaintiff reported and complained to Defendant RUIZ and other medical staff about Defendant LIN's conduct and actions alleged in paragraphs 27, 28, and 30. Defendants RUIZ, KFH, LIN, and other medical staff knew about Plaintiff's complaints and reports.

30.   On or around November 30, 2022, Defendant LIN returned to the emergency room and entered Plaintiff's hospital room. At this time, Defendant LIN did not provide or attempt to provide Plaintiff with any physical examination or with any other medical care or treatment or questions about her health conditions or progress. Instead, Defendant LIN immediately asked Plaintiff if she read the bible that he gave her on November 29, 2022. Plaintiff told LIN that she did not read the

bible then he became upset and aggressively and in an intimidating manner raised his voice and told Plaintiff that she needed to read his bible. Defendant LIN then told Plaintiff that he was going to order a surgical procedure for a biopsy requiring Plaintiff's leg and muscle to be cut open which Plaintiff exercised her medical right and refused the surgery. Even though Plaintiff refused the surgery, and it was not done, Defendant LIN had authority over Plaintiff and the ability to carry out the surgery. Plaintiff is a reasonable person and other reasonable persons like and in the Plaintiff's position would or could have been intimidated, fearful of, and viewed LIN's ordering of the surgery to be medically unnecessary and used as a legal way to coverup his intent and attempt to commit and inflict violent, harmful, and offensive contact against Plaintiff. Defendants DO, RUIZ, and KFH approved, ratified, knew of, and/or participated in Defendants LIN's ordering and attempt to commit the unnecessary and improper biopsy and surgical procedure against Plaintiff. Defendants LIN, RUIZ, DO, and KFH did not and did not attempt to explain to Plaintiff the reason, risks, benefits, or effects of or for the biopsy surgical procedure, including the failure to explain any risk if Plaintiff declined that surgical procedure. Plaintiff's knowledge and belief, LIN failed to discontinue his order for the surgical procedure and actually ordered and approved the order or procedure which was medically unnecessary and done for discriminatory and retaliatory reasons. Because Defendants LIN, RUIZ, DO, KFH, and other medical staff already discovered and learned about the reasons and a diagnosis for Plaintiff chronic inflammation, muscle weakness, and inability to walk and move around, and because Plaintiff was informed by medical doctors during her subsequent hospitalization at Defendant KFH's Anaheim hospital that Defendant LIN's ordering of the surgical biopsy procedure was not medically necessary because of his prior knowledge and discoveries of the reasons and a diagnosis for Plaintiff chronic inflammation, muscle weakness, and inability to walk and move around, it

FIRST AMENDED COMPLAINT FOR DAMAGES

was and Plaintiff reasonably believed that Defendant LIN's ordering of and attempt to carry out the surgical biopsy procedure against her was not medically necessary.

31.    As a direct, substantial, and/or motivating reason for Plaintiff's physical disabilities and serious and chronic health conditions; for Plaintiff's complaints, reports, and oppositions to and against Defendant LIN in paragraphs 27, 28, 29, and 30; for Plaintiff exercising her medical right to refuse the surgical biopsy procedure; and for Plaintiff's lack of religion, atheism/agnosticism beliefs or practice, and her repeated rejection and opposition to read Defendants LIN's Christian bible and accept his Christian religious beliefs, Defendant LIN with the assistance, instigation, approval, encouragement, participation, and/or supervision of Defendants KFH, RUIZ, DO, and FLORES repeatedly harassed and intimidated Plaintiff; ordered an unnecessary surgical procedure; approved, recommended, and ordered that Plaintiff's steroid and IV solutions and medication that were necessary and required to treat and stabilize Plaintiff's emergency health conditions and symptoms to be discontinued; denied Plaintiff a physical and visual examination and adequate medical care and treatment; approved, recommended, and ordered that Plaintiff be discharged from the hospital without stabilizing her emergency medical condition; and failed and refused to stabilize Plaintiff's serious and chronic medical conditions.  Defendant LIN's conduct against Plaintiff was done intentionally; in bad faith; with deliberate indifference to Plaintiff, her medical rights, and serious medical conditions and disabilities; for discriminatory and retaliatory reasons; to or in an attempt to intimidate, punish, cause or inflict fear, mental and physical harms, scars, control, offensive contact, against Plaintiff and her body; and to or in an attempt to interfere with Plaintiff's medical, civil, and federal rights in paragraph 33 below.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

32.     Defendants LIN and KFH denied Plaintiff full and equal privileges and services at Defendant KFH's emergency department or hospital.  Defendant LIN provided Plaintiff with a discriminatory and different examination than he would have offered to other patients presenting similar emergency symptoms or health conditions like Plaintiff, including other patients who are, or are not Christians but would have accepted LIN's Christian religious beliefs and read his bible.  For example, Defendant LIN did not offer or provide Plaintiff (1) with any oxygen or IV fluids, (2) with any pain or blood pressure medication, (3) with any treatment options or physical or visible medical examinations or regular in person room visits for the purpose to provide Plaintiff medical care or treatment, (4) EKG, or (5) with any consultation or questions about Plaintiff's serious medical conditions or necessary or required treatment to adequately treat and stabilize Plaintiff's serious and emergency medical conditions, and Defendant LIN (6) ordered an unnecessary, improper, and retaliatory biopsy surgical procedure against Plaintiff and to cause her mental and physical harm and scars, (7) overlooked Plaintiff's lab test results when LIN knew or reasonably should have known that Plaintiff and her lab results showed that Plaintiff was suffering from emergency health conditions and elevated, abnormal, unsafe, and/or life threatening blood, troponin, and creatine Phosphokinase levels, including abnormal red and white blood cells count and chronic inflammation and swelling in her body, and (8) inappropriately discontinued Plaintiff's IV and steroid medication and improperly discharged Plaintiff without stabilizing her emergency medical conditions.  In contrast, Defendant LIN would have provided or offered other patients presenting similar emergency health conditions like Plaintiff and other patients who lacked a Christian Religion but was willing to pray with LIN and who had read his Christian bible with oxygen to help them breath better or stabilize the breathing; with IV fluids to keep them hydrated or from being dehydrated; with

FIRST AMENDED COMPLAINT FOR DAMAGES

continued steroids and other necessary medication to reduce and stabilize their pain, inflammation, and unsafe blood pressure levels in their body; with a physical and visible examination to check for possible signs of a stroke or weakness, mobility, swelling, or infection in their body, and to listen to their heart and lungs for possible signs or heart attack, respiratory distress or lung infection; and with frequent room visits and health discussion in order to check on and monitor the safety, wellbeing, and progress of the patient and his or her condition and health needs; and Defendant LIN would not have discontinued the similarly situated patients IV Fluids or steroid medications or discharged them from the hospital before stabilization their emergency medical condition; and Defendant LIN would not have ordered a biopsy surgical procedure when he already knew the medical reasons and diagnosis causing the other patients chronic inflammation and their lack of ability to walk or move around.  As a motivating, substantial, or proximate reason for Defendant LIN's negligent and discriminatory medical screening and conduct against Plaintiff, Defendants LIN and KFH refused to provide and denied Plaintiff an immediate, adequate, and/or reasonable medical care and treatment; Defendant LIN failed to identify, treat, and stabilize other serious and life threatening autoimmune diseases that Plaintiff had and was not aware of but was later informed of while receive emergency medical services at the Kaiser Anaheim hospital following Defendants inappropriate discharge; Defendants LIN and KFH failed to follow or comply with their own EMTALA Medical Screening Examination procedures resulting in a reckless disregard and disparate treatment medical screening of Plaintiff and her serious health condition, and causing Plaintiff to suffer, without limitations to, shock, worsening medical conditions and body pain, panic and anxiety, higher blood pressure, increase in shorten breathing, increase in Troponin and Creatine Phosphokinase levels, and intimidation and fear. Defendant LIN owed Plaintiff a reasonable duty of care, and purposely and

FIRST AMENDED COMPLAINT FOR DAMAGES

negligently breached that duty by failing or refusing to adequately treat or stabilize Plaintiff's emergency medical conditions without delay and before inappropriately discharging her from the hospital, by failing or refusing to provide Plaintiff medical services or treatment free from unlawful discrimination and retaliation, by denying and ignoring Plaintiff's request to receive an appropriate medical screening and examination for her serious emergency conditions, by failing and refusing to monitor Plaintiff and her health conditions, by failing and refusing to provide Plaintiff with any physical or visual examination, and by filing and refusing to adequately communicate with Plaintiff about her health conditions, progress, and medical treatment options.

33.    Defendant LIN, by means of discrimination, retaliation, intimidation, and/or coercion, did, and attempted to intentionally violate, disregard, and/or infringe on Plaintiff rights in Cal. Civ. Code § 43; Cal. Civ. Code § 51; Cal. Civ. Code § 51(b); Cal. Civ. Code § 52.1; Cal. Civ. Code § 54.1; Health and Safety Code § 1317(b); Health and Safety Code § 1278.5(b)(1)(A)-(b)(2); California Code of Regulation § 72527, § 73523, § 70707; 42 CFR § 482.13; the ADA; and United State Code 42 U.S.C.A. § 1395dd et seq., to receive or seek medical care, treatment, service, and stabilization free from discrimination, retaliation, bodily restraint or harm, personal insult, and/or from injury to her personal relations, and in a safe setting.

34.    As a direct, proximate, substantial, or motivating cause for Defendant LIN's conduct and inactions against Plaintiff in paragraphs 27 thru 33, she suffered intimidation, fear, anxiety, worsening medical conditions, an inappropriate and premature discharge from the hospital or emergency room, and deprivation of her medical rights and entitlements mentioned in paragraph 33. Because of LIN's conduct, Plaintiff reasonably believed she was about to be touched in a harmful or offensive manner a reasonable person in Plaintiff's position would have been

FIRST AMENDED COMPLAINT FOR DAMAGES

offended by LIN's touching.  Plaintiff also reasonably believed she was about to be subjected to an unnecessary, harmful, and offensive biopsy surgical procedure and a reasonable person in Plaintiff's position would have been offended by LIN's unnecessary, harmful, and offensive attempted biopsy surgical procedure.

35.     While still in Defendant KFH's Downey emergency room on or about November 30, 2022, Plaintiff reported and complained to Defendants RUIZ, FLORES, CAMPBELL, and other medical staff and supervisors that the medical staff is not properly monitoring her IV and caused her arm to hurt, bleed, swell, and infiltrate; that a medical doctor did not check on her and her medical condition for long and unreasonable periods of time; that the medical staff inappropriately removed her IV and IV fluids and medication for hours and for an unreasonable amount of time; that the medical staff improperly and repeatedly failed to inset a needle to withdraw blood from her arm, during which the medical staff showed a lack of training and the ability to safely and properly withdraw Plaintiff's blood and caused her unnecessary and preventable pain, bruises, scared tissues, and collapsed veins, and that the medical staff was providing her poor medical treatment.

36.     Defendants RUIZ, FLORES, CAMPBELL, and the other medical staff and management knew of Plaintiff complaints in paragraph 35.  After and as a direct, motivating, or substantial motivating, or proximate cause of Plaintiff's complaints and reports in paragraph 35, Defendant CAMPBELL came to Plaintiff's room in an upset, intimidating, forceful, threatening, and offensive manner; and used her hands and tightly grabbed and restrained Plaintiff's left arm and repeatedly poked Plaintiff with catheter needle in that arm and without Plaintiff's consent and when Plaintiff told her not to.  Plaintiff resisted and tried pulling away from Defendant CAMPBELL, but CAMPBELL refused to remove her hands from Plaintiff then forcefully ripped off medical tape from Plaintiff's left arm when

FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff told her not to.  Defendant CAMPBELL was upset and her conduct and touching against Plaintiff was avoidable and was not done in a courteous or causal manner or for a legitimate or medical purpose or practice.  CAMPBELL's actions and touching against Plaintiff was also unlawful, wrong, intentional, knowingly, willful, intimidating, offensive, and violent to and against Plaintiff, and done without Plaintiff's request or consent.  Defendant CAMPBELL's touching and conduct against Plaintiff was also an intentional and unlawful attempt with her present ability to commit violent and offensive acts and injury on Plaintiff. CAMPBELL's conduct against Plaintiff was also unreasonable and not necessary to perform or practice medicine or medical treatment on Plaintiff and was done to intimidate and control Plaintiff's movement in order to punish Plaintiff for complaining and to or in an attempt to prevent Plaintiff from continuing to exercise her medical rights to make reports and grievances about her medical care and treatment by the Defendants, and to or in an attempt to violate Plaintiff's rights to seek medical services safely and free from bodily restraints and mental and physical abuse and harms. Because of CAMPBELL's conduct, Plaintiff reasonably believed she was about to be touched in a harmful or offensive manner a reasonable person in Plaintiff's position would have been offended by CAMPBELL's touching.

37.    As a direct, substantial, or proximate cause for Defendant CAMPBELL's conduct against Plaintiff in paragraph 36, Plaintiff suffered intimidation, shock, instant pain, loud outburst saying ouch "that hurts," and crying, and some bruising to her arm.

38.    After and as a direct, motivating, or proximate cause of Plaintiff's complaints in paragraph 35, on or around December 1, 2022, Defendant FLORES came to Plaintiff's room in an upset, intimidating, harassing, argumentative, and hostile manner, and told Plaintiff that she was being discharged for her repeated complaints and dissatisfaction with her medical treatment at KFH's Downey

emergency room and hospital.  Plaintiff told FLORES that she did not consent to the discharge because her medical conditions were not stabilized and that she needed her last dose of IV steroid for her chronic inflammation and to stabilize emergency health conditions.  Plaintiff also complained to FLORES that the discharge was retaliatory, and she informed FLORES that she would not leave the hospital because her health condition had not been stabilized and because it was not safe to do so. Plaintiff also told FLORES that the law did not require Plaintiff to leave the hospital under her un-stabilized emergency medical conditions and that she would file a civil lawsuit against FLORES and the some of the Defendants in this action if she was forced to involuntary leave the hospital.  FLORES handed Plaintiff her discharge papers, raised her voice and told Plaintiff in an intimidating and argumentative manner that since Plaintiff complained and did not like being at the Downey hospital that Plaintiff needed to leave the hospital.  FLORES also threatened to call the hospital security and law enforcement against and to physically remove Plaintiff if she refused to leave hospital.  Defendant FLORES was part of Plaintiff's medical care and treatment and was aware that Plaintiff was a physically disabled and chronically ill patient suffering from un-stabilized emergency medical conditions, including Plaintiff's chronic swelling throughout her body and inability to move around and independently care or do for herself at the hospital.  FLORES acted with willful and deliberate indifference to Plaintiff's physical disabilities and emergency medical condition and denied or attempted to deny Plaintiff of her rights to present complaints, to refuse being discharged, to full and equal accommodations, privileges and services at the Kaiser Downey Hospital, and her right to receive a safe, and a discriminatory, retaliatory, and abusive free medical care and treatment.  Defendant FLORES would have not threatened to call security or law enforcement to remove a stabilized or non- physically disabled patient who complained about their care and treatment or refused to be discharged.  Defendant FLORES instigated, participated

FIRST AMENDED COMPLAINT FOR DAMAGES

in, encouraged, ratified, and assisted in the retaliatory, inappropriate, and unsafe discharge against Plaintiff and engaged in intimidating conduct to coerce Plaintiff to leave the hospital when Plaintiff did not consent or lawfully have to.  Defendant FLORES conduct and actions against Plaintiff as a substantial or proximate motivating cause for Plaintiff's physical disabilities and/or complaints, and for the intimidation, fear, worry, and panic that Plaintiff suffered as a result of FLORES conduct and actions against her.

39.     As a direct, proximate, or substantial motivating cause for Plaintiff's physical disabilities, preexisting chronic illnesses and medical conditions, complaints, reports, and/or oppositions alleged throughout this lawsuit, and for intentional retaliatory and/or discriminatory reasons, Defendants KFH, RUIZ, LIN, and DO, and each of them encouraged, approved, instigated, assisted one another, and/or recommended that Plaintiff be discharged from the hospital and without her emergency medical conditions being stabilized.  On December 1, 2022, and within one to two days after Plaintiff complaints and reports, and in bad faith and without Plaintiff's consent, and without providing Plaintiff with an adequate medical examination and screening, and without informing Plaintiff of their duty of care and the risks associated with the discharge, and without providing a doctor's certification that the discharge outweigh the risks of the discharge or Plaintiff's health conditions; Defendants KFH, RUIZ, LIN, and DO, and each of them  stopped Plaintiff's IV, medications, and medical care and treatment, and inappropriately discharged her from the hospital without stabilizing her emergency and chronic health conditions and symptoms. At the time of that discharge, Plaintiff and her health conditions were not stabled; she was still in pain and experiencing anxiety, chest pains, numbness, swelling, and the loss of feeling in her hands, feet, and legs; she was still suffering from breathing problems, unsafe, elevated, and abnormal Troponin, Creatine Phosphokinase, and blood pressure levels; she was still suffering

FIRST AMENDED COMPLAINT FOR DAMAGES

from the inability to walk or move around on her own independently and safely presenting a fall risk; she was still suffering from abnormal bleeding and blood clotting, was still suffering from unsafe amounts of inflammation throughout her body, and was at a high risk of suffering a heart attack, stroke, death, and other injuries to her organs.

40.     On or around December 1, 2022, Plaintiff opposed and complained about the inappropriate, unsafe, and retaliatory discharge to Defendants RUIZ, FLORES, and other medical staff.  Defendant RUIZ then told Plaintiff that he was not aware of the discharge or Plaintiff's still existing emergency health conditions and symptoms.  RUIZ's allegations and statements were false.  In bad faith, and without the intent to stabilize Plaintiff's emergency and chronic medical conditions and symptoms, and in an attempt to avoid liability, Plaintiff was readmitted to KFH's hospital as an observation patient and requested that Defendants provide her with adequate medical care and treatment to stabilize her emergency and chronic health conditions before being discharged.  Because the Defendants continued to fail to provide Plaintiff with the necessary and required medical care and treatment to properly care for and stabilize her emergency medical conditions, Plaintiff exercised her rights and engaged in further complaints, reports, and opposition to the Defendants about their ongoing improper, inadequate, discriminatory, retaliatory, and unlawful conduct and poor medical treatment against her and her physical disabilities and emergency health conditions.

41.     On December 3, 2022, and within two days after Plaintiff complaints and reports in paragraph 40; and in bad faith and without Plaintiff's consent; and without discussing any discharge instructions or future plans for medical treatment with Plaintiff; and without providing Plaintiff with an adequate medical screening; and without informing Plaintiff of his duty of care and the risks associated with the discharge; and without providing a doctor's certification that the discharge

FIRST AMENDED COMPLAINT FOR DAMAGES

outweigh the risks of the discharge or Plaintiff's health conditions, Defendant RUIZ with the approval, assistance,  authorization, participation, encouragement, and consultation of Defendants LIN, KFH, and other medical staff, Defendant RUIZ and LIN, and each of them inappropriately discharged Plaintiff a second time without stabilizing her emergency and chronic health conditions and symptoms. At that time, Plaintiff and her health conditions were not stabled; she was still in pain and experiencing anxiety, chest pains, numbness, swelling, inflammation, and the loss of feeling in her hands, feet, and legs, breathing problems; she was still suffering from unsafe elevated blood pressure and abnormal blood levels, she was still suffering from the inability to walk or move around on her own independently and safely presenting a fall risk; she was suffering from abnormal bleeding and blood clotting, she was still suffering from unsafe/abnormal levels of inflammation in her body, and she was still at a high risk to suffer a heart attack or death.

42.     As a direct, proximate, or substantial motivating cause of Defendants DO, RUIZ, LIN, KFH, and their medical staff's inappropriate discharge, desperate medical screening of Plaintiff, including their refusal or failure to stabilize and adequately treat and monitor Plaintiff's emergency medical conditions and chronic illnesses, Plaintiff's health conditions and symptoms deteriorated by the day which required her to go to Defendant KFH's Anaheim emergency department for emergency medical treatment on December 10, 2022.  Plaintiff was admitted to the Anaheim emergency room from December 10, 2022 to December 17, 2022, for her chronic and emergency medical conditions.  Plaintiff received appropriate and adequate medical screenings, care, and treatment from December 10, 2022 to December 17, 2022, at the Anaheim emergency room and hospital.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

43.     At some point during Plaintiff's stay at the Downey hospital, Defendants DO, LIN, RUIZ, and KFH, and each of them knew, documented, and/or diagnosed Plaintiff with having chronic rheumatologic diseases or medical conditions; shortening of breath; serious fatigue, chest pain and tightening; abnormal, unsafe, and elevated inflammation, blood pressure, Troponin, Creatine Phosphokinase, and white and red blood count and levels.  Defendants DO, LIN, RUIZ, and KFH, and each of them ignored and acted with deliberate indifference to Plaintiff's lab and test results and to her emergency medical conditions and chronic diseases, they failed to provide Plaintiff with adequate medication and an inadequate amount of medication or prescription to stabilize her emergency medical conditions and symptoms, and they inappropriately and negligently discharged her from the hospital or emergency room on December 1, 2022 and December 3, 2022 without stabilizing her emergency medical conditions.

44.     As a direct, proximate, or motivating cause for Defendants KFH, DO, LIN, RUIZ, FLORES, and CAMPBELL's intentional, retaliatory, offensive, negligent, discriminatory conduct or desperate treatment against Plaintiff, Plaintiff suffered pain, intimidation, fear, harassment, anxiety, worsening health and medical conditions, an inappropriate and premature discharge from the hospital, deprivation of her medical rights and entitlements to seek and make reports and complaints about her medical treatment without discrimination and retaliation, an assault and battery, and deprivations and violation of her rights mentioned in paragraph 45.

45.     Defendants KFH, DO, LIN, RUIZ, FLORES, and CAMPBELL, by means of discrimination, retaliation, intimidation, and/or coercion, did, and attempted to intentionally violate, disregard, and/or infringe on Plaintiff rights in Cal. Civ. Code § 43; Cal. Civ. Code § 51; Cal. Civ. Code § 51(b); Cal. Civ. Code § 52.1; Cal. Civ. Code § 54.1; Health and Safety Code § 1317(b); Health and Safety

FIRST AMENDED COMPLAINT FOR DAMAGES

Code § 1278.5(b)(1)(A)-(b)(2); California Code of Regulation § 72527, § 73523, § 70707; 42 CFR § 482.13; the ADA; and United State Code 42 U.S.C.A. § 1395dd et seq., to receive or seek medical care, treatment, service, and stabilization free from discrimination, retaliation, bodily restraint or harm, personal insult, and/or from injury to her personal relations, and in a safe setting.

46.     Defendants DO, RUIZ, LIN, FLORES, and CAMPBELL, and each of them denied Plaintiff full and equal privileges and services at Defendant KFH's emergency department or hospital.  Defendants DO, RUIZ, LIN, FLORES, and CAMPBELL, and each of them provided Plaintiff with a discriminatory and different examination or treatment than they would have offered to other patients presenting similar physical disabilities, emergency medical conditions, complaints, and reports, and/or lack of a Christian Religion like Plaintiff.  Defendants KFH, DO, RUIZ, LIN, and FLORES, and each of them failed to and did not comply with Kaiser Foundation Hospitals' EMTALA Policy and procedures by (1) delaying the examination and treatment of Plaintiff's emergency medical conditions, (2) by failing to stabilize Plaintiffs' emergency medical conditions before discharging her from the emergency room, (3) by failing or refusing to provide Plaintiff with an appropriate medical screening after Plaintiff's requested such screening and medical treatment, (4) by failing or refusing to use their capability of the hospital staff, resources, and ancillary services routinely available to the hospital to adequately treat and care for Plaintiff's emergency medical conditions, (5) by failing to perform physician medical screening exams to identify or rule out emergency medical conditions of Plaintiff, and (6) by not posting EMTALA signage that is visible and obvious to Plaintiff and other patients.

47.     Defendants DO, RUIZ, LIN, KFH, and FLORES, and each of them owed Plaintiff a reasonable duty of care, and intentionally and negligently breached that duty by failing or refusing to treat or stabilize, or adequately treat or

stabilize Plaintiff's emergency medical condition; by failing or refusing to provide Plaintiff medical services or treatment free from unlawful discrimination, retaliation, harassment, restraint, and/or physical and mental abuse and harms; and by failing to respect, observed, and comply with all of Plaintiff's medical and civil rights. Defendants DO, RUIZ, LIN, and KFH may have provided Plaintiff with a partial adequate medical screening by later detecting that she was suffering from an emergency medical condition but each of them also provided Plaintiff with an inappropriate and insufficient medical screening and acted with intentional and willful deliberate indifference to Plaintiffs lab test results and to her known physical disabilities, chronic illnesses, and emergency medical conditions. As a result of their deliberate indifference to Plaintiff's emergency medical conditions, Defendants DO, RUIZ, LIN, and KFH failed to identify, treat, and stabilize a life threatening and systematic autoimmune disease that Plaintiff had during the Downey emergency hospitalization but was first brought to Plaintiff's attention my doctors during her hospitalization at the Kaiser Anaheim emergency room on or around December 10, 2022.

48.     On or around March 7, 2023, Plaintiff went to Defendants KFH, AGUDA, THOMAS, and SATHAS Anaheim emergency department because she was suffering from severe, intolerable, and uncontrolled abdominal pain and vomiting, fatigue, and shorten of breath.  Because Plaintiff was in severe and intolerable pain, and because of her underlying chronic illnesses, she requested immediate medical treatment and to been immediately seen by a doctor which the medical staff denied.  Defendant AGUDA and the other medical staff observed and ignored the seriousness of Plaintiff's emergency medical condition and did not provide her with the requested or immediate medical care or treatment to control or reduce her pain.  Defendant AGUDA and the other medical staff determined that Plaintiff was suffering from an emergency medical condition and knew that

Plaintiff was a chronically ill and physically disabled patient and provided her a yellow and red risk band identifying Plaintiff as a fall risk and emergency need and high-risk patient.  Despite acknowledging these facts, Plaintiff was required to sit in a wheelchair in the emergency waiting room for about forty-five minutes as she was panicking, crying, yelling, and begging for pain medication and medical attention for her sever and uncontrolled body pain.  Defendants AGUDA, KFH, and the other medical staff acted with intentional and deliberate indifference to Plaintiff's emergency medical conditions and failed to comply with Kaiser Foundation Hospitals' EMTALA Policy and procedures by delaying and unreasonably delaying the examination and treatment of Plaintiff's emergency medical conditions.

49.     Defendant AGUDA observed and was aware of Plaintiff's panicking, crying, yelling, begging for pain medication, a doctor, and medical treatment, and was in severe pain.  Defendant AGUDA repeatedly and unsuccessfully attempted to insert an IV catheter in Plaintiff's arm and withdraw her blood. AGUDA became upset with Plaintiff and threatened to call security if she did not sit still and stop yelling as a result of her intolerable, uncontrolled, and severe abdominal pain. Plaintiff was not able to stop yelling as a result of her intolerable, uncontrolled, and severe abdominal pain.

50.     Plaintiff repeatedly requested AGUDA to get her a medical doctor and told Defendant AGUDA that he was hurting her as he made multiple failed attempts to insert an IV catheter properly and skillfully in Plaintiff's arm and withdraw her blood.  The plaintiff resisted, pulled away, and told AGUDA that he did not have her consent to poke her with the IV catheter again.  Defendant AGUDA became upset, and in an intimidating and offensive manner tightly grabbed, pulled on, and restrained Plaintiff's arm with his hands, told and forced Plaintiff to be still, and poked Plaintiff in her are and tried to insert the IV catheter

FIRST AMENDED COMPLAINT FOR DAMAGES

in Plaintiff's arm again.

51.    Defendant AGUDA's repeated conduct and touching against Plaintiff was avoidable and was not done in a courteous or causal manner or for a legitimate or medical purpose or practice.  AGUDA's repeated actions and touching against Plaintiff was also unlawful, wrong, intentional, willful, intimidating, threatening, offensive, and violent to and against Plaintiff, and done without Plaintiff's request or consent. Defendant AGUDA's repeated touching and conduct against Plaintiff was also an unlawful attempt with his present ability to commit violent acts or injury on Plaintiff and to retaliate Plaintiff her for inability to stop yelling as a result of her intolerable, uncontrolled, and severe abdominal pain.  AGUDA's knew that he did not have permission to continue to poke her with the IV catheter, therefore, his repeated poking of Plaintiff with the needle was unlawful and unreasonable and done to intimidate and control Plaintiff's movement in order to force Plaintiff's to sit still and to prevent Plaintiff from exercising her rights to refuse medical service and to seek medical services safely and free from bodily restraints, abuse, and harms.

52.    While still at Defendants Anaheim emergency room on or around March 7, 2023, Defendants THOMAS and SATHAS were licensed registered nurses involved in or assigned to provide Plaintiff with medical care and treatment. Because Plaintiff was suffering from her physical disabilities, handicaps, and limitations arising from her overlapping chronic illnesses and severe muscle weaknesses, including her inability to walk to or use the restroom independently and safely, Plaintiff asked Defendant THOMAS to bring her a portable toilet and to assist her in getting out of the hospital bed in order to urinate. Defendants THOMAS knew or reasonably should have known that Plaintiff was a physical disabled patient suffering from chronic illnesses. THOMAS insisted on inserting a vaginal catheter in Plaintiff, which Plaintiff exercised her medical right and refused

the catheter for health and safety reasons and to prevent or avoid the risk of an infection from the catheter.  Defendant THOMAS's sole reason for wanting to insert a vaginal catheter in Plaintiff was for her convenience and so that she did not have to help Plaintiff every time she needed to use the restroom.

53.     After Plaintiff request for medical assistance from THOMAS, and after Plaintiff refused the vaginal catheter from THOMAS, THOMAS became upset, and in an intimidating and resistant manner, THOMAS provided Plaintiff with a portable toilet and was hesitant to help Plaintiff out of the hospital bed so she can urinate. Because the portable toilet was too low and unsafe for Plaintiff to use because of her muscle weakness, she asked THOMAS to lift the portable toilet which she did in an angry manner telling Plaintiff that she did not want to break her nails. THOMAS broke her nail when adjusting the portable toilet for Plaintiff, then repeatedly blamed Plaintiff for her nail being broken in an argumentative and intimidating manner.  THOMAS then refused to provide Plaintiff with further medical care and treatment and refused to properly and diligently monitor Plaintiff's IV catheter that was inserted in her left arm.

54.     Defendant THOMAS went to break without informing Plaintiff or checking Plaintiff's IV catheter in her left arm.  Defendant SATHAS was Plaintiff's assigned nurse while Defendant THOMAS was on a break.  Defendants THOMAS and SATHAS were aware that Plaintiff had an IV catheter in her left arm, but intentionally and negligently ignored and failed to monitor or properly monitor the IV catheter and Plaintiff's medical care and treatment.

55.     Defendants KFH, THOMAS, SATHAS, and AGUDA, and each of them owed Plaintiff a reasonable and ordinary duty of care to use their nursing skills and roles diligently to provide Plaintiff with a safe, adequate, and non-discriminatory medical care; to properly operate and monitor Plaintiff's IV catheter; to prevent or lessen injuries or suffering to Plaintiff from the IV catheter;

FIRST AMENDED COMPLAINT FOR DAMAGES

to make sure Plaintiff is comfortable and free of harms; to safely and diligently use and insert a needle and catheter in Plaintiff's body; and to properly monitor and coordinate with one another about Plaintiff's care and treatment and the medical equipment and medication used to treat and care for Plaintiff.

56.     Defendants KFH, THOMAS, SATHAS, and AGUDA intentionally, willfully, and with disregard to Plaintiff's safety, health, wellbeing, and medical care and treatment, breached their duties to Plaintiff, and as a direct or proximate cause of the breach, Plaintiff suffered, panic and shock, and pain, swelling, hemorrhaging, the unnecessary loss of blood, infiltration, damaged tissue, bruises to her left arm; and/or an assault and battery.  At all relevant times alleged here, Defendants THOMAS, SATHAS, and AGUDA were acting for his, her, or its own personal account and as licensed registered nurses, operators, agents, employees, trustees, for each other and for Defendant KFH, and as such was acting within the scope, course, and purpose of such authority, services, agency, registered nurses, operators, agents, employees, or trustees.

57.     Defendant KFH is the principle for Defendants THOMAS, SATHAS, and AGUDA, and could have, but failed to train or supervise or properly train or supervise Defendants THOMAS, SATHAS, and AGUDA to prevent injuries and negligent conduct or inactions against Plaintiff during the medical treatment and care at the Anaheim emergency room.

58.     At all relevant times alleged herein, Defendant KFH was a participating hospital or health facility that owned, maintained, and operated an emergency department and health facility to provide emergency services to the public, and KFH emergency room and hospital had appropriate facilities and qualified personnel available to provide emergency services and care.

FIRST AMENDED COMPLAINT FOR DAMAGES

59.     At all relevant times alleged herein, Plaintiff reasonably believed that if she continued to seek medical care and treatment for her emergency and chronic medical conditions, and make reports and complaint against Defendants DO, LIN, FLORES, and CAMPBELL about their misconduct and poor quality medical care and treatment against Plaintiff; that these defendants they had the ability to, and would and discriminate and retaliate against her, inappropriately discharge her from the hospital without stabilizing her emergency medical conditions, deny her medical care and services and discontinue her medication that were necessary to stabilize her emergency medical conditions, subject her to an assault and battery, order unnecessary and adverse medical orders against or for her.

60.     At all relevant times here, Plaintiff had rights under Cal. Civ. Code § 43; Cal. Civ. Code § 51; Cal. Civ. Code § 51(b); Civ. Code § 54.1; Health and Safety Code § 1317(b); Health and Safety Code § 1278.5(b)(1)(A)-(b)(2), California Code of Regulation § 72527, § 73523, § 70707, United State Code 42 U.S.C.A. § 1395dd et seq.; 42 CFR § 482.13 and/or the Americans With Disability Act ("ADA"), to receive or seek medical treatment, service, and stabilization free from discrimination, retaliation, bodily restraint or harm, personal insult, and from injury to her personal relations. Each of the Defendants intentionally violated and acted with deliberate indifference to one or more of Plaintiff's rights alleged here.

61.     Plaintiff also had the rights (1) to exercise patient rights without regard to disability or medical condition; (2) to be free from discrimination based on sex, race, color, religion, ancestry, national origin, sexual orientation, disability, medical condition; (3) to be fully informed by a physician of his or her total health status; (4) to be informed of continuing health care requirements following discharge from the hospital; (5) to participate actively in decisions regarding medical care; (6) to consent to or to refuse any treatment or procedure or

FIRST AMENDED COMPLAINT FOR DAMAGES

participation in experimental research or practices; (7) to receive all information that is material to an individual patient's decision concerning whether to accept or refuse any proposed treatment or procedure; (8) to be encouraged and assisted throughout the period of stay to exercise rights as a patient; (9) to file complaints or grievances free from restraint, interference, coercion, discrimination or retaliation; (10) to be free from discrimination based on disability or medical condition or religion or religious beliefs; (11) to receive care in a safe setting; (12) to be treated with consideration, respect and full recognition of dignity and individuality; (13) to be free from mental and physical abuse and harassment; (14) to be free from restraint of any form, imposed as a means of coercion, discipline, convenience, or retaliation by staff; (15) to receive reasonable responses to any reasonable requests made for service; (16) to be discharged only for medical reasons; and (17) to have her all of her patient rights observe and complied with by the medical staff.  Each of the Defendants intentionally violated and acted with deliberate indifference to one or more of Plaintiff's rights alleged here, and each of them also breached their professional and legal duties to Plaintiff to comply with and observe her rights discussed above.

62.    Plaintiff reviewed the information documented in her medical records relating to the incidents giving rise to this lawsuit, and noticed and discovered that the records contain false, altered, incomplete, inadequate medical records and information, and/or bad faith or unreasonable delayed addendums.  Plaintiff reasonably believe that such false, altered, incomplete, inadequate medical records and information, and/or bad faith or unreasonable delayed addendums were done by one or more of the Defendants in this action in order to avoid civil liability and cover up their unlawful conduct and actions against Plaintiff.

//

1

## FIRST CAUSE OF ACTION

## FAILURE TO PROVIDE APPROPRIATE MEDICAL SCREENING EXAMINATION OR TREATMENT TO STABILIZE MEDICAL CONDITION; INAPPROPRIATE DISCHARGE

(EMTALA, 42 U.S.C. § 1395dd & Health and Safety Code § 1317(a))

(Against Defendant KFH)

63.     Plaintiff re-alleges and reincorporates by reference each and every allegation contained in all previous paragraphs and sections, as though fully set forth herein.

64.     Section 42 U.S.C. § 1395dd(a) requires if medical exam or treatment for a medical condition is requested by an individual who comes into a hospital's emergency room, the participating hospitals with emergency departments to provide patients with "an appropriate medical screening examination, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists." "If the hospital determines that a patient has an emergency medical condition, the hospital must provide further medical examination and required treatment to stabilize the medical condition. 42 U.S.C. § 1395dd(b)(1).  The hospital may not transfer such a patient until the condition is stabilized, or other statutory criteria are fulfilled. 42 U.S.C. § 1395dd(c).

65.     The term "transfer" means the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital, 42 USC § 1395dd(e)(4).  The term "to stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from the facility...." 42 U.S.C. § 1395dd(e)(3)(A).

FIRST AMENDED COMPLAINT FOR DAMAGES

66.   <u>California Health and Safety Code § 1317(a)</u> imposes on California hospitals an obligation that "Emergency services and care shall be provided to any person requesting the services or care, or for whom services or care is requested, for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when the facility has appropriate facilities and qualified personnel available to provide the services or care."

67.   Plaintiff sufficiently alleges in the Statement of Facts ("SOF") that Defendant KFH is an participating hospital with an emergency department (SOF, ¶¶ 20, 58); that she went to Defendants emergency room and requested medical care and treatment for her chronic and emergency medical conditions (SOF, ¶¶ 19, 40, 48); that the Defendants knew about her chronic illnesses and emergency medical conditions and determined that she was suffering from an emergency medical condition and failed to stabilize them (SOF, ¶¶ 19, 43, 48); that the Defendants failed to provide her with an adequate non-discriminatory medical screening, exam, and treatment without delay (SOF, ¶¶ 23, 32, 46, 48); that the Defendants failed to stabilize her emergency medical conditions and inappropriately discharged or attempted to inappropriately discharge her from the emergency room or hospital (SOF, ¶¶ 21, 39, 41, 43); that Defendant KFH had an appropriate emergency department and qualified medical staff to provide emergency medical care and services (SOF, ¶ 58); and that she suffered harm as a result of the discriminatory medical screening and treatment (SOF, ¶¶ 24, 34, 44, 47.)

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION

### DISCRIMINATION

(Unruh Civil Rights Act, Cal. Civil Code § 51;  Cal. Civil Code § 54.1; &

Health and Safety Code § 1317(b))

(Against Defendants KFH, LIN, RUIZ, DO, & FLORES)

68.     Plaintiff re-alleges and reincorporates by reference each and every allegation contained in all previous paragraphs and sections, as though fully set forth herein.

69.     Cal. Civ. Code § 51(b) provides in relevant part: All persons within the jurisdiction of this state are free and equal, and no matter what their religion or health condition are entitled to the full and equal privileges or services in all business establishments of every kind whatsoever.

70.     Cal. Civil Code § 54.1 provides in relevant part that "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, ...., and other places to which the general public is invited, ..."  "A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section." Cal. Civ. Code § 54(d).

71.     Health and Safety Code § 1317(b) provides in relevant part that "In no event shall the provision of emergency services and care be based upon, or affected by, the person's preexisting medical condition, or any other characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code."

72.     Plaintiff sufficiently alleges in the Statement of Facts ("SOF") that Defendant KFH is a health facility or entity that owns and operate a health facility or emergency room (SOF, ¶¶ 20, 58); that Defendants DO, LIN, KFH, FLORES, and RUIZ discriminated against her because of, or as a motivating cause her lack

of religion, preexisting medical conditions, and/or complaints (SOF, ¶¶ 22, 23, 31, 38, 39); that Defendants KFH, DO, LIN, FLORES, and RUIZ denied her full and equal medical privileges and services (SOF, ¶¶ 22, 32, 46, 38); that Defendants KFH, DO, LIN, LORES, and RUIZ violated her rights under the ADA (SOF, ¶¶ 24, 33, 45, 38); and that she suffered harm as a result of the discriminatory conduct (SOF, ¶¶ 34, 42, 44, 38.)

### THIRD CAUSE OF ACTION

**DISCRIMINATION**

(Health and Safety Code § 1278.5)

(Against Defendant KFH)

73.     Plaintiff re-alleges and reincorporates by reference each and every allegation contained in all previous paragraphs and sections, as though fully set forth herein.

74.     Health and Safety Code § 1278.5(b)(1)(A)-(b)(2) provides in relevant part: A health facility or entity that owns or operates a health facility shall not discriminate or retaliate, in any manner, against a patient, employee, member of the medical staff, or other health care worker of the health facility because that person has done either of the following: Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity.

75.     Health and Safety Code § 1278.5 in relevant part defines a "health facility" to mean "the facility's administrative personnel, employees, ……, and medical staff. Health and Safety Code § 1278.5(i).

76.     The Plaintiff fulfills the above requirements by sufficiently alleging in her Complaint that Defendants KFH, DO, LIN, FLORES, AND RUIZ is/are a health facility (Complaint, Dkt. 1 at ¶¶ 5, 8, 9, 10, 11, 18, 58); that Defendants DO,

LIN, KFH, FLORES, and/or RUIZ discriminated against her because of, or as a motivating cause her lack of religion, physical disability, preexisting medical conditions, and/or complaints (Complaint, Dkt. 1 at ¶¶ 22, 23, 31, 38, 39); that Defendants KFH, DO, LIN, FLORES, and RUIZ denied her full and equal medical privileges and services (Complaint, Dkt. 1 at ¶¶ 22, 32, 38, 46); that Defendants KFH, DO, LIN, FLORES, and RUIZ violated her rights under the ADA (Complaint, Dkt. 1 at ¶¶ 24, 33, 45); and that she suffered harm and losses as a result of the discriminatory conduct (Complaint, Dkt. 1 at ¶¶ 34, 38, 42, 44.)

## **FOURTH CAUSE OF ACTION**
### **RETALIATION**
(EMTALA, 42 U.S.C. § 1395dd & Health and Safety Code § 1278.5)
(Against Defendant KFH)

77.     Plaintiff re-alleges and reincorporates by reference each and every allegation contained in all previous paragraphs and sections, as though fully set forth herein.

78.     Health and Safety Code § 1278.5(b)(1)(A); (b)(2) provides in relevant part that "A health facility or entity shall not discriminate or retaliate, in any manner, against a patient, employee, member of the medical staff, or other health care worker of the health facility because that person has done either of the following: Presented a complaint or report to the facility, or the medical staff of the facility. Section 1278.5(d)(1) provides a rebuttable presumption of retaliation if "responsible staff at the facility" knew that that Plaintiff filed a complaint, and the staff or facility then executed an adverse or retaliatory action against Plaintiff within 120 days of the filing of the complaint.

//
//

FIRST AMENDED COMPLAINT FOR DAMAGES

79.  <u>Health and Safety Code § 1278.5</u> in relevant part defines a "health facility" to mean "the facility's administrative personnel, employees, ……, and medical staff. <u>Health and Safety Code § 1278.5(i).</u>

80.  <u>United State Code 42 U.S.C.A. § 1395dd</u> prohibits hospitals that have entered into Medicare provider agreements from inappropriately transferring (discharging) or refusing to stabilize and/or provide medical care to "any individual" with an emergency medical condition. "The term "transfer" means the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital." *Id*. at § 1395dd(e)(4).

81.  Plaintiff sufficiently alleges in the Statement of Facts ("SOF") that Defendant KFH is a health facility or hospital (SOF, ¶¶ 5, 18, 58); that she made reports and complaints to Defendants DO, LIN, KFH, RUIZ, FLORES, and CAMPBELL about her care and treatment, and opposed LIN's religious beliefs against her (SOF, ¶¶ 21, 27, 29, 35, 38, 40); that Defendants DO, LIN, KFH, RUIZ, FLORES, and CAMPBELL knew about her reports, complaints, or oppositions (SOF, ¶¶ 21, 29, 36); that she was improperly discharged from the hospital or emergency department within one to two days following her reports, complaints, and opposition (SOF, ¶¶ 39, 41); that she suffered retaliation and adverse actions by Defendants (such as an retaliatory discharge, poor medical care and treatment, an assault and battery, discontinuance of her medications, and a retaliatory order for a surgical procedure) as a result of her seeking medical care and treatment, and making complaints, reports, and opposition to and against them (SOF, ¶¶ 21, 22, 28, 30, 36, 38, 39, 41); and that Defendants caused her harm in retaliation for her making reports, complaints, and opposing Defendants unlawful conduct against her at the hospital and emergency room (SOF, ¶¶ 31, 33, 34, 37, 42, 44, 45.)

FIRST AMENDED COMPLAINT FOR DAMAGES

## FIFTH CAUSE OF ACTION

**ASSAULT & BATTERY, OFFENSIVE/HARMFUL CONTACT**

(Cal. Code Civ. P. § 335.1, Cal. Civ. Code § 43, & Rest. (2d.) of Torts § 13)

(Against Defendants LIN, CAMPBELL, & AGUDA)

82.     Plaintiff re-alleges and reincorporates by reference each and every allegation contained in all previous paragraphs and sections, as though fully set forth herein.

83.     Cal. Code Civ. P. § 335.1  permits a civil action for as assault or battery caused by the neglect or wrongful act if an individual against another person. Cal. Penal Code § 240 defines an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 242 defines a battery as "any willful and unlawful use of force or violence upon the person of another."

84.     Restatement (2d.) § 13 provides in relevant part that "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."

85.     Cal. Civ. Code § 43 provides in relevant part that "every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, and from injury to his personal relations.")  "Restraint" is defined as  "Any manual method, physical or mechanical device, material, or equipment that immobilizes or reduces the ability of a patient to move his or her arms, legs, body, or head freely." 42 CFR § 482.13(e)(1)(i)(A).

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

86.     Plaintiff sufficiently alleges in the Statement of Facts ("SOF") that Defendant CAMPBELL came to her hospital room in an upset, intimidating, forceful, threatening, and offensive manner; that CAMPBELL used her hands and grabbed Plaintiff's left arm and poked Plaintiff with catheter needle in that arm as Plaintiff resisted and pulled away and without Plaintiff's consent; that CAMPBELL forcefully ripped off medical tape from Plaintiff's left arm; that CAMPBELL was upset and her conduct and contact against Plaintiff was done offensively, violently, forcefully, knowingly, willfully, unlawfully, intentionally, and to cause Plaintiff harm,; that CAMPBELL had a reasonable ability and unlawful attempt to commit violent acts against Plaintiff (SOF, ¶ 36), and that as a director proximate cause of CAMPBELL's offensive and violent contact, Plaintiff was harm (SOF, ¶ 37).

87.     Plaintiff sufficiently alleges in the Statement of facts ("SOF") that Defendant LIN became upset and was or appeared to be angry in his facial expressions, and in an intimidating and forceful manner, LIN raised his voice and forced Plaintiff to take his bible, that he tightly and forcefully grabbed Plaintiff's right hand, that Plaintiff repeatedly tried to pull away from LIN, but he refused to and did not let Plaintiff go and holing her against her will and by means of physical restraints, that Defendant LIN's conduct and touching against Plaintiff was unlawful, wrong, intentional, willful, intimidating, offensive, and violent to and against Plaintiff, and done without Plaintiff's request or consent, that Defendant LIN's touching and conduct against Plaintiff was an unlawful attempt with his present ability to commit violent acts or injury on Plaintiff, and that LIN's conduct against Plaintiff was done to intimidate and control Plaintiff's movement to force Plaintiff's to attend to and acceptance to his Christianity religion and to prevent Plaintiff from exercising her own religious beliefs and rights to seek medical services safely and free from bodily restraints, abuse, and harms. (SOF ¶ 28).

88.     Plaintiff also sufficiently allege that Defendant AGUDA was hurting her as he made multiple failed attempts to insert an IV catheter in Plaintiff's arm and withdraw her blood; that she resisted and told AGUDA not to poke her with the IV catheter again; that AGUDA became upset, and in an intimidating and offensive manner grabbed and pulled Plaintiff's arm with his hands, told Plaintiff to be still, and inserted the IV catheter in Plaintiff's arm again; that AGUDA's offensive conduct and contact against her was done without her consent; that ADUDA's contact and conduct against her was done offensively, violently, forcefully, knowingly, willfully, unlawfully, intentionally, and to cause her physical and emotional harm; and that AGUDA had a reasonable ability and unlawful attempt to commit violent acts against her. (SOF, ¶¶ 50, 51), and that as a direct or proximate cause of Defendant AGUDA's offensive and violent contact, Plaintiff was harm. (SOF, ¶ 51.)

## SIXTH CAUSE OF ACTION
## THREAT AND INTIMIDATION

(Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1)

(Against Defendants DO, LIN, CAMPBELL, FLORES, & AGUDA)

89.     Plaintiff re-alleges and reincorporates by reference each and every allegation contained in all previous paragraphs and sections, as though fully set forth herein.

90.     Cal. Civ. Code § 52.1 provides in part: that a person is authorized to bring a claim for relief against anyone who interferes or attempt to interfere, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law. Cal. Civ. Code § 52.1(c).

91.     The word "interferes" as used in the Bane Act means "violates." See *Jones v. Kmart Corp*., (California Supreme Court, 1998) 17 Cal.4th 329, 338.  A threat

FIRST AMENDED COMPLAINT FOR DAMAGES

"involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." See *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474, (Mass. 1994), citing "*Delaney* v. *Chief of Police of Wareham,* 27 Mass. App. Ct. 398, 409 (1989) ("acts or language by which another is placed in fear of injury or damage"). ""Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. " *Planned Parenthood League of Massachusetts v. Blake*, 417 Mass. 467, 474 (Mass. 1994), citing *Redgrave* v. *Boston Symphony Orchestra, Inc.,* 399 Mass. 93, 104 (1987); *Delaney* v. *Chief of Police of Wareham,* 27 Mass. App. Ct. 398, 409 (1989) ("creation of fear to compel conduct").  "Coercion" is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Planned Parenthood League of Massachusetts v. Blake*, 417 Mass. 467, 474 (Mass. 1994), quoting *Deas* v. *Dempsey,* 403 Mass. 468, 471 (1988); *Delaney* v. *Chief of Police of Wareham,* 27 Mass. App. Ct. 398, 409 (1989) ("the active domination of another's will").  "Restraint" is defined as  "Any manual method, physical or mechanical device, material, or equipment that immobilizes or reduces the ability of a patient to move his or her arms, legs, body, or head freely." 42 CFR § 482.13(e)(1)(i)(A).

92.    Defendant KFH Human Resources Policy define "*Acts and/or threats of violence include physical assaults and* actions or statements which, either directly or indirectly, by words, gestures, symbols, intimidation, or coercion give reasonable cause to believe that the personal safety of the affected individual or others may be at risk."

93.    Section 52.1 is independent of Cal. Civ. Code 51.7, (see Civil Code § 52.1(h)), it does not require any showing of actual intent to discriminate, and a defendant is liable if he or she interfered with the plaintiffs constitutional rights by the requisite threats, intimidation, or coercion. " See *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841-843 (Cal. 2004).

94.     Plaintiff sufficiently allege that Defendants DO, LIN, FLORES, AGUDA, and CAMPBELL, intentionally and by means of discrimination, retaliation, intimidation, and/or coercion, did, and attempted to violate, disregard, and/or infringe on Plaintiff rights in <u>Cal. Civ. Code § 43</u>; <u>Cal. Civ. Code § 51</u>; <u>Cal. Civ. Code § 51(b)</u>; <u>Civ. Code § 54.1</u>; <u>Health and Safety Code § 1317(b)</u>; <u>Health and Safety Code § 1278.5(b)(1)(A)-(b)(2)</u>, <u>California Code of Regulation § 72527, § 73523, § 70707</u>, <u>United State Code 42 U.S.C.A. § 1395dd et seq.</u>; <u>42 CFR § 482.13</u> and the <u>Americans With Disability Act</u> ("ADA"), to receive or seek medical treatment, service, and stabilization free from discrimination, retaliation, bodily restraint or harm, personal insult, and from injury to her personal relations. (SOF, ¶¶ 24, 33, 45); and that she suffered harm as a result of Defendants DO, LIN, FLORES, AGUDA, and/or CAMPBELL's interference or attempted interference and violations of her rights (SOF, ¶¶ 34, 44.)

95.     Plaintiff also sufficiently allege that she reasonably believed that if she continued to seek medical care and treatment for her emergency and chronic medical conditions, and make reports and complaint against Defendants DO, LIN, FLORES, AGUDA, and CAMPBELL about their misconduct and poor quality medical treatment that they provided to Plaintiff; that they had the ability to, and would and discriminate and retaliate against her, inappropriately discharge her from the hospital without stabilizing her emergency medical conditions, deny her medical care and services and discontinue her medication that were necessary to stabilize her emergency medical conditions, subject her to an assault and battery, order unnecessary and adverse medical orders against Plaintiff; and violate and interfere on her rights mentioned in paragraph 83 (SOF, ¶ 59), all which they did.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

### SEVENTH CAUSE OF ACTION

### NEGLIGENCE

(Cal. Civ. Code §§ 1714 & 2338; and Restatement (3d) of Torts § 14)

(Against Defendants KFH, AGUDA, THOMAS, & SATHAS)

96.    Plaintiff re-alleges and reincorporates by reference each and every allegation contained in all previous paragraphs and sections, as though fully set forth herein.

97.    Cal. Civ. Code § 2338 provides in relevant part: "a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal." *Id*.

98.    Cal. Civ. Code § 1714 provides in relevant part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." Cal. Civ. Code § 1714(a).

99.    Restatement (3d) of Torts § 14 provided that "An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect."

100.    Plaintiff sufficiently allege that Defendants KFH, THOMAS, SATHAS, and AGUDA owed Plaintiff a reasonable and ordinary duty of care to use their nursing skills and roles diligently to provide Plaintiff with a safe, adequate, and non-discriminatory medical care; to properly operate and monitor Plaintiff's IV catheter; to prevent or lessen injuries or suffering to Plaintiff from

FIRST AMENDED COMPLAINT FOR DAMAGES

the IV catheter; to make sure Plaintiff is comfortable and free of harms; to safely and diligently use and insert a needle and catheter in Plaintiff's body; and to properly monitor and coordinate with one another about Plaintiff's care and treatment and the medical equipment and medication used to treat and care for Plaintiff (SOF, ¶ 55); that they intentionally and willfully, and with disregard to Plaintiff's safety, health, wellbeing, and medical care and treatment, breached their duties to Plaintiff (SOF, ¶ 56); and that as a direct or proximate cause of the breach, Plaintiff suffered, panic and shock, and pain, swelling, hemorrhaging, the unnecessary loss of blood, infiltration, damaged tissue, bruises to her left arm; and/or an assault and battery. (SOF, ¶ 56.)

101.   Plaintiff also sufficiently allege that Defendants THOMAS, SATHAS, and AGUDA were acting for his, her, or its own personal account and as registered nurses, operators, agents, employees, trustees, for each other and for Defendant KFH, and as such was acting within the scope, course, and purpose of such authority, services, agency, registered nurses, operators, agents, employees, or trustees, (SOF, ¶ 56); and that Defendant KFH is the principle for Defendants THOMAS, SATHAS, and AGUDA, and could have, but failed to train or supervise or properly train or supervise Defendants THOMAS, SATHAS, and AGUDA to prevent injuries and negligent conduct or inactions against Plaintiff during the medical treatment and care at the Anaheim emergency room (SOF, ¶ 57.)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Dominique Daniels prays for judgement against Defendants as follows:

(1)   For actual damages in an amount according to proof at time of trial;

(2)   For general damages in an amount according to proof at time of trial;

(3)   For punitive damages for Plaintiff's Intentional Tort/Battery Cause of

FIRST AMENDED COMPLAINT FOR DAMAGES

Action in an amount appropriate to punish Defendant(s) for engaging in unlawful misconduct as allowed by Cal. Civ. Code § 3294 and any other applicable law;

(4)     For interest at 10% per annum as allowed by Cal. Civ. Code § 3291 and any other applicable state, local and/or federal law;

(5)     For civil penalties and/or recoverable damages as allowed by Cal. Civ. Code § 52, Cal. Civ. Code § 52.1, Cal. Health & Safety Code § 1278.5, 42 USC § 1395dd, Cal. Penal Code §§ 242, 243, 243.2, and/or any other applicable state, local, and/or federal law;

(6)     For cost of suit incurred;

(7)     For reasonably attorney fees (if applicable), as allowed by law;

(8)     For any further relief the Court deems just and proper; and

(9)     Plaintiff reserves the right to amend her Complaint to add a cause of action or request for relief for punitive damages under Civil Code § 3294(a) for her negligence cause of action.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Dominique Daniels demands a trial by jury on all causes of actions so triable.

Dated: May 3, 2024                    Respectfully submitted,

Dominique Daniels
Plaintiff in Pro Per

FIRST AMENDED COMPLAINT FOR DAMAGES