1
2
3

Dominique Daniels
1907 N. Keene Avenue
Los Angeles, California 90059
ddaniels34@toromail.csudh.edu

4
5

Plaintiff in Pro Per

**F I L E D**
CLERK, U.S. DISTRICT COURT

06/03/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

6
7

8       **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA**

10

11

Dominique Daniels,

12              Plaintiff,

13       vs.

14

15   KAISER FOUNDATION HOSPITALS;
Cesar Aguda; Andrea Campbell;
16   Celine Flores; Arsineh Khachekian Do;
Wayne-Bo-Stein Lin; Jose Alomias Ruiz
17   Sashikanth Sathas; Brieanna Thomas,
Does 1-10, inclusive,
18
19              Defendant(s).
20

Case No.: 8:24-cv-00022-MEMF-(JDEx)

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS
MOTION TO DISMISS
PLAINTIFFS FIRST AMENDED
COMPLAINT**

Hearing Date:  7/15/2024
Hearing Time:  01:30 PM
Judge: Hon. Maame Ewusi-Mensah Frimpong
Place: Courtroom 8B, 8th Floor
Complaint Filed: 1/3/2024
Jury Trial Date: *Not yet set*

21
22   //
23   //
24   //
25   //
26   //
27   //
28   //

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUN OF POINTS AND AUTHORITIES ................................................1

I.   BRIEF INTRODUCTION AND PROCEDURAL HISTORY ……......…......1

II.  THE DEFENDANTS FAILED TO COMPLY WITH LOCAL RULE 7-3
     AND THEIR MOTION TO DISMISS SHOULD BE DENIED AND NOT
     CONSIDERED ……………………………………..……………….……..2

III. LEGAL STANDARD ..........................................................................4

IV.  ARGUMENT ………..................................................................6

     A. Plaintiff Sufficiently States A Claim Under The EMTALA And
        California Health & Safety Code § 1317 …………………………..……….6

     B. Plaintiff Sufficiently States A Discrimination Claim Under The Unruh
        Civil Rights Act And California Health & Safety Code § 1317 And
        §1278.5 ……………………………………………………..…..14

     C. Plaintiff Sufficiently States A Discrimination Claim Under California
        Health & Safety Code § 1278.5 ………………………………….…17

     D. Plaintiff Sufficiently States A Retaliation Claim Under California Health
        & Safety Code § 1278.5 And The EMTALA……………………….....18

     E. Plaintiff Sufficiently States A Claim For Assault & Battery…………..20

     F. Plaintiff Sufficiently States A Claim Under The Tom Bane Act…....…22

     G. Plaintiff Sufficiently States A Claim For Negligence……………..…..24

V.   CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Access Ins. Co. v. Peralta*,
    No. SACV15622JLSAJWX, 2015 WL 13036938 (C.D. Cal. Oct. 13, 2015) .......3

*Alborzi v. University of Southern California*,
    55 Cal.App.5th 155 (Cal.App. 2 Dist., 2020) …………..…..……….....…….18

*Aldis v. United States*,
    2019 WL 6717602 (D.Hawaii, 2019) ……………………………………….13

*al-Kidd v. Ashcroft*,
    580 F.3d 949 (9th Cir. 2009) …………………………………..………..…..4

*Arrington v. Wong*,
    19 F.Supp.2d 1151 (D.Hawai i,1998) …………………………..…..…..6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) …………………………..……………....…4

*Atayde v. Napa State Hosp.*,
    No. 16-CV-00398-DAD-SAB, 2016 WL 4943959 (E.D. Cal. Sept. 16, 2016) .....22

*Baker v. Adventist Health, Inc.*,
    260 F.3d 987 (9th Cir. 2001) …………………………..…………..…..6

*Barris v. Cnty. of Los Angeles*,
    20 Cal.4th 101 (Cal., 1999) …………………………………………..6, 7

*Barrows v. Burwell*,
    777 F.3d 106 (2d Cir. 2015) …………………………………………....7

*Battle v. Mem. Hosp.*,
    228 F.3d 544 (5th Cir. 2000) …………………………….……………..…6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) …………………………..………………..……..…4

*Beery v. Hitachi Home Electronics (America) Inc.*,
   157 F.R.D. 477 (C.D. Cal. 1993) …………………………………………...5

*Blanchard v. Kellum,*
   975 S.W.2d 522 (Tenn.1998) ………………………………………..……...21

*Boedeker v. Farley*,
   2020 WL 2536969 (C.D.Cal., 2020) …………………………..……...…3

*Bordelon v. Mindoro*,
   2019 WL 1438853 (N.D.Cal., 2019) …………………………………….13

*Boyd v. City of Oakland,*
   458 F.Supp.2d 1015 (N.D.Cal.2006)) ……………………………………20

*Broadus v. Clark Cty. Jail*,
   No. 2:04-cv-0294-RCJ-PAL, 2007 WL 9728878 (D. Nev. Jan. 19, 2007) ………12

*Cary v. Arrowsmith*,
   777 S.W.2d 8 (Tenn.Ct.App.1989) ………………………………………....21

*Castillo v. Norton*,
   219 F.R.D. 155 (D.Ariz.,2003) …………………………….…………...…..…..5

*Cerelux Ltd. v. Yue Shao*,
   2017 WL 4769459 (C.D. Cal. June 9, 2017) …………………………...…3

*Calco v. Össur Americas, Inc.*,
   2024 WL 694369 (C.D.Cal., 2024) …………………………….………...3

*Carrion v. United States*,
   2016 WL 4087104, at *1 (D.Nev., 2016) …………………………...……11

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*,
   387 F.Supp.2d 1084 (N.D.Cal., 2005) ………………………….………..22

*Crawford v. Kaiser Foundation Health Plan*,
   395 F.Supp.3d 1279 (N.D.Cal., 2019) ……………………….…………11

iv
MEMORANDUM OF POINTS AND AUTHORITIES

*Davison v. Santa Barbara High School District,*
   48 F.Supp.2d 1225 (C.D.Cal.1998) …………………………………..…..…..5

*Dicioccio v. Chung,*
   232 F. Supp. 3d 690 (E.D. Pa. 2017) ………………………………..…..……11

*Elam v. College Park Hospital*,
   132 Cal.App.3d 332 (Cal.App. 4 Dist., 1982) …………………………..…….24

*Entler v. Gregoire*,
   872 F.3d 1031 (9th Cir. 2017) ……………..……………………………..……4

*Erickson v. Pardus*,
   551 U.S. 89 (2007) …………………………………………..……………...…..4

*Estate of Wilson by and through Jackson v. Cnty. of San Diego,*
   2022 WL 789127 (S.D.Cal., 2022) ………………………………..…..…......23

*Estelle v.* Gamble,
   429 U. S. 97 (1976) ………………………………...…………………………..13

*Faulkner v. Lucile Salter Packard Children's Hospital at Stanford*,
   2023 WL 2351651 (N.D.Cal., 2023) …………………………………….....18

*Foman v. Davis,*
   371 U.S. 178 (1962) ……………..……………..………………………...…..5

*George v. Sonoma Cnty. Sheriff's Dept*.,
   732 F.Supp.2d 922 (N.D.Cal., 2010) ……………………………...…7, 15

*Greenlee v. Astrue,*
   2012 WL 2192277, at *6 (D.Or.,2012) ……………………………………..11

*Grimes v. Riverman,*
   2016 WL 281661 (E.D.Cal., 2016) ……………………………..………..…12

*Gomez v. Ladan*,
   2024 WL 402810, at *9 (E.D.Cal., 2024) ………………………………….12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gutierrez v. Santa Rosa Mem'l Hosp.*,
 No. 16-cv-02645-SI, 2016 WL 5930587 (N.D. Cal. Oct. 12, 2016) ……..………10

*Ivan Gutzalenko, et al., v. City of Richmond*, et al.
 2024 WL 1141689 (N.D.Cal., 2024) …………….…………………….………...…21

*Hankins v. El Torito Restaurants, Inc.,*
 63 Cal.App.4th 510, 520, 74 Cal.Rptr.2d 684 (1998) ……………………………15

*Hairston v. Negron,*
 557 Fed.Appx. 884 (C.A.11 (Fla.),2014) …………………………………………...12

*Hebbe v. Pliler,*
 627 F.3d 338 (9th Cir. 2010) …………………………….………………………..4

*Hedges v. United States*,
 404 F.3d 744 (3d Cir. 2005) ……….…………………………………...…5

*Hernandez v. Constable*,
 2022 WL 1241192 (E.D.Cal., 2022) …………………………………………...12

*Henderson v. Colvin*,
 2016 WL 1180139 (C.D.Cal., 2016) …..…………………………………………11

*Huckaby v. East Ala. Medical Ctr.,*
 830 F.Supp. 1399 (M.D.Ala.1993) ……………………………...……………..6

*Jackson v. Cnty. of San Diego*,
 2022 WL 789127 (S.D.Cal., 2022) ……................................................24

*Jackson v. East Bay Hosp.*,
 246 F.3d 1248 (9th Cir. 2001) ……………………………..…..6, 10

*Jett v. Penner*,
 439 F.3d 1091 (9th Cir. 2006) …………………………………………....…..22

*Johnson v. Mol*,
 2011 WL 4405121 (E.D.Cal.,2011) ………………………………….……14, 15

*Johnson v. Superior Court*,
 143 Cal. App. 4th at 305 (2006) …………………………………………...…..24

*Jones v. Kmart Corp*.,
 17 Cal. 4th 329 (1998) …………………………………………………….......22, 23

*Khoury v. Maly's of California, Inc.*,
 14 Cal.App.4th 612 (1993) ………………..…………………………..…………...5

*Lietz v. Department of Veterans Affairs*,
 2023 WL 5350844 (D.Idaho, 2023) …………..…………………….…………5

*MacLeod v. U.S.*,
 1994 WL 860798 (C.D.Cal.,1994) ……………………………………………11

*Marlene F. v. Affiliated Psych. Med. Clinic, Inc.*,
 48 Cal. 3d 583, 588–89, 257 Cal.Rptr. 98, 770 P.2d 278 (1989) ………..………24

*Mathison v. Moats*,
 812 F.3d 594 (C.A.7 (Ill.), 2016) …………………………………………………12

*Martin v. Stoops Buick, Inc.*,
 No. 1:14-cv-00298-RLY-DKL, 2016 WL 2989037 (S.D. Ind. May 24, 2016) .....16

*Mayer v. Redix*,
 2016 WL 11743217 (C.D.Cal., 2016) ………………………………….…..…24

*Meador v. Hammer*,
 2015 WL 1238363 (E.D.Cal.,2015) …………………………………….…..11

*McMullen v. Fluor Corp.*,
 81 Fed.Appx. 197, 199, 2003 WL 22700954 (C.A.9 (Cal.),2003) ……………….5

*MG Premium Ltd. v. Does 1-20*,
 2022 WL 19829376 (C.D.Cal., 2022) ………………………………......……....3

*Moses v. Providence Hosp. & Med. Ctrs., Inc.*,
 561 F.3d 573 (6th Cir. 2009) …………………………….…………….……...11

*Munoz v. Watsonville Cmty. Hosp.*,
  No. 15-cv-00932-BLF, 2017 WL 363330 (N.D. Cal. Jan. 25, 2017) …….....…..10

*Munson v. Del Taco, Inc.*,
  46 Cal.4th 661 (2009) …………………………………………….....…..14

*Nixon in Interest of Moore v. Buck*,
  2019 WL 6620504 (C.D.Cal., 2019) ……………………………….……20

*Norfolk Cnty. Retirement System v. Community Health Systems, Inc.*,
  877 F.3d 687 (C.A.6 (Tenn.), 2017) …………………………………..13

*Noyes v. Kelly Servs. Inc.*,
  488 F.3d 1163 (9th Cir. 2007) …………………………………………...17

*Prime Healthcare Services—Montclair, LLC v. Hargan*,
  2018 WL 333862 (C.D.Cal., 2018) …………………………………….12

*Rainer v. Community Memorial Hospital*,
  18 Cal. App. 3d 240 (1971) …………………………………………......21

*Reese v. County of Sacramento*,
  888 F.3d 1030 (9th Cir. 2018) …………………………………………22

*R.H. v. Cty. of San Bernardino*,
  No. 5:18-CV-01232-JLS-KK, 2019 WL 10744836 (C.D. Cal. Sept. 25, 2019) …..3

*Ruiz v. Kepler*,
  832 F.Supp. 1444 (D.N.M.1993) …………………………………....…..6

*Rhodes v. Placer Cnty.*,
  2011 WL 1302240 (E.D.Cal.,2011) …………………...…………...…..20, 21

*RHUB Communications, Inc. v. Karon*,
  2018 WL 707596 (N.D.Cal., 2018) ………………………….………....…..5

*Ryan v. Professional Disc Golf Association*,
  2023 WL 3378469 (E.D.Cal., 2023) ………………….……………..……14

*Sanders v. Legacy Emanuel Medical Center*,
    676 Fed.Appx. 709 (C.A.9 (Or.), 2017) …………………….…………....4, 10

*Scott v. California Medical Group*,
    2017 WL 10434016 (C.D.Cal., 2017) …………………………...……..…22

*Scott v. Montgomery Cnty. Sch. Bd.*,
    963 F. Supp. 2d 544 (W.D. Va. 2013) ……………………….………..…16

*Shoyoye v. County of Los Angeles*,
    203 Cal. App. 4th 947 (2012) …………………..……………...……22

*Shuler v. Garrett*,
    743 F.3d 170 (C.A.6 (Tenn.), 2014) …………………………………..21

*So v. Shin*,
    212 Cal. App. 4th 652 (2013) ……………………………………...……..20

*Superbalife, Int'l v. Powerpay*,
    2008 WL 4559752 (C.D.Cal.,2008) ………………………..…………….....3

*Thornton v. Sw. Detroit Hosp.*,
    895 F.2d1131 (6th Cir. 1990) ……………………………….…...……10

*United States v. Sanders*,
    2021 WL 38174 (E.D.Cal., 2021) ……………………………………..12

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ……………………………………5

*Venegas v. County of Los Angeles*,
    32 Cal.4th 820, 841-843 (Cal. 2004) ………………………………….22

*Villaverde v. Aranas*,
    2022 WL 943067 (D.Nev., 2022) ………………………………………..12

*Welsh v. United States*,
    398 U.S. 333 (1970) ……………………………………….......16

*Whitworth v. City of Sonoma*,
   2004 WL 2106606 (Cal.App. 1 Dist.,2004) …………………………....……..…22

**Statues**

Americans With Disability Act …………………………………....…....……...14

Cal. Civ. Code § 43 ……………………………...…………………………..20

Cal. Civ. Code § 51 ……………………………………………………....…...14

Cal. Civ. Code § 51(b) …………………………………………………………14

Cal. Civ. Code § 51(e)(4) …………………………………………………...17

Cal. Civ. Code § 51(f) ………………………………………………..………..15

Cal. Civ. Code § 52.1 …………………………………………………..21, 22, 23

Civil Code § 52.1(h) …………………...……………………………………22

Cal. Civ. Code § 51.7 …………………………………………………………22

Cal. Civ. Code § 54 ……………………………………………………14

Cal. Civ. Code § 54.1(a)(1) …………………………………..……….14, 15

Cal. Code. of Regs. § 97500.73 …………………………………………..7

Cal. Ed. Code § 212.3 …………………………………………………17

Cal. Gov. Code § 12926(g) …………………………………………..……17

Cal. Penal Code § 422.56(g) ……………………………………………....17

EMTALA …………………………………………………………………1

Health & Safety Code § 1278.5 ……………………………....…..1, 17, 18, 19

H & S Code § 1278.5(b)(1) ……………………………………...…18, 19

Health and Safety Code § 1278.5(b)(1)(A) ………………………………….17

Health & Safety Code § 1278.5(c) ……………………………….……..17, 19

Health and Safety Code § 1278.5(i) ……………………………….....7, 18, 19

Health and Safety Code § 1317 …………………………………..…..1, 7, 15

Health and Safety Code § 1317(a) ……………………………...…..1, 7, 14

MEMORANDUM OF POINTS AND AUTHORITIES

Health and Safety Code § 1317(b) …………………………………………7, 9, 14, 15

Health and Safety Code § 1317.1(b) ……………………………………………..7

42 USC § 1395dd(e)(1)(A)…………………………………………..………...7

42 USC § 1395dd(e)(2) ……………………………………………...……....6

42 U.S.C. § 1395dd(e)(3)(A) ……………………………………………….…...7

42 U.S.C. § 438.114 …………………………………………………...…...7

42 C.F.R. § 489.24(d)(2)(i) ………………………….……...…...7

## **Rules**

Local Rule 7-3 ……………………………………………………….…...1, 2, 3

Local Rule 7-4 ………………………………………………………….……3

Fed. R. Civ. P. 1 ……………………………………………………….……..1

Fed. R. Civ. P. 8 ………………………………………………...…………25

Fed. R. Civ. P. 8(a)(2) …………………………………………..………1, 4

Fed. R. Civ. P. 12(b)(6) ……………………………….…..………...4, 5, 6

Fed. R. Civ. P. 12(f)(1) …………………………………………………….3

## **Other**

Jud. Council of Cal. Civil Jury Instructions, CACI No. 3060 Unruh Civil Rights Act—Essential Factual Elements) (2022) …………………………..…………14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>BRIEF INTRODUCTION AND PROCEDURAL HISTORY</u>

On April 19, 2024, the Court granted the Defendants' Motion to Dismiss Plaintiff's original Complaint and ordered Plaintiff to file an amended complaint by May 3, 2024, if she wishes to (Dkt. 29).  Plaintiff filed a timely First Amended Complaint ("FAC." Dkt. 31) and cured the deficiencies discussed in the Courts April 19, 2024 Order (Dkt. 29).  For example, Plaintiff alleges in her FAC each of the individual Defendants job title; she removed the individual Defendants from her discrimination and retaliation causes of action under the <u>EMTALA</u> & <u>Health and Safety Code § 1317(a)</u> and <u>§ 1278.5</u>; she alleges each of the Defendants discriminatory and retaliatory actions against her; she alleges her protected classes violated by the Defendants; she alleges why she believed that she was suffering from an emergency medical condition prior to going to Defendants emergency department; she alleges how the Defendants provided her with a discriminatory and different examination than they would have offered to other patients presenting similar emergency symptoms or health conditions like herself; and she alleges that the Defendants determined that she was suffering from an emergency medical condition during the emergency department visits discussed in the FAC. The Plaintiff's FAC also satisfy the pleading requirement in <u>Fed. R. Civ. P. 8(a)(2)</u> by  containing a short and plain statement of each of her claims showing that she is entitled to relief and giving the Defendants fair notice of her claims and the grounds upon which they rest.

Despite the above facts, the Defendants filed their instant Motion to Dismiss (Dkt. 33) in bad faith, with intentional disregard to and without complying with the meet and confer requirements of <u>Local Rule 7-3</u>, and to unreasonably delay and deny the secure, just, speedy, and inexpensive determination of this action with disregard and in violation of the scope and purpose of <u>Fed. R. Civ. P. 1</u>.

## II.   DEFENDANTS FAILED TO COMPLY WITH LOCAL RULE 7-3 AND THEIR MOTION TO DISMISS SHOULD BE DENIED AND NOT CONSIDERED

In a good faith effort to meet and confer with the Defendants about their instant Motion to Dismiss, Plaintiff attempted to contact the Defendants attorney Zachary Schwake on May 13, 2024 and May 16, 2024, however, attorney Schwake not available or did not answer (Plaintiffs' Decl., at ¶ 3 & Exhibit 1; at ¶ 4 Exhibit 2).  Via email on May 13, 2024, Plaintiff asked attorney Schwake to inform her of the date that the Defendants will file the instant Motion to Dismiss and the date and time that he propose to meet and confer 7 days before the filing of Defendants instant Motion. (Plaintiffs' Decl., at ¶ 5; & Exhibit 1).  In a reply email dated May 13, 2024, attorney Zachary Schwake untruthfully told Plaintiff that the Defendants will be filing their instant Motion to Dismiss on Friday, May 17, 2024 (Plaintiffs' Decl., at ¶ 6; & Exhibit 1), however, the Defendants actually filed the Motion to Dismiss on Thursday, May 16, 2024 (Dkt. 33).

Local Rule 7-3 clearly requires the parties to hold the conference at least 7 days prior to the filing of the Defendants instant Motion to Dismiss and to discuss thoroughly, the substance of the contemplated motion and any potential resolution. This mean that the Defendants were required to meet and confer with Plaintiff no later than May 9, 2024.  The Defendants did not make any attempt to request to meet and confer with Plaintiff on or before the May 9, 2024 deadline. (Plaintiffs' Decl., at ¶ 7).  Such intentional conduct is unfair and shocking to Plaintiff and has unfairly prejudiced and deprived Plaintiff from receiving prior notice of the basis for the Defendants instant Motion to Dismiss; from procedural fairness and equality; from reaching any potential resolution of the matter; and from wasting her time and resources to oppose Defendants improper and unnecessary second Motion to Dismiss. (Plaintiffs' Decl., at ¶ 9).

MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to <u>Fed. R. Civ. P. 12(f)(1)</u> or <u>Local Rule 7-4</u>, the Court should strike or decline to consider the Defendants motion for their intentional failure and refusal to comply or fully comply with Local Rule 7-3. See e.g., *MG Premium Ltd. v. Does 1-20*, 2022 WL 19829376, at \*1 (C.D.Cal., 2022)(denying Defendants motion to dismiss pursuant to and noting "Defendant's motion for relief from one requirement of Local Rule 7-3 does not excuse his failure to comply in other respects with Local Rule 7-3" and …..); *Boedeker v. Farley*, 2020 WL 2536969, at \*1 (C.D.Cal., 2020) ("Because Defendants inexcusably breached Local Rule 7-3, the Court hereby DENIES Defendants' Motion."); same *Cerelux Ltd. v. Yue Shao*, 2017 WL 4769459, at \*1 (C.D. Cal. June 9, 2017); *Calco v. Össur Americas, Inc*., 2024 WL 694369, at \*1 (C.D.Cal., 2024)(Declining to consider Össur's motion is the appropriate remedy and noting that "Compliance with the Local Rules is not optional.")(citing C.D. Cal. L.R. 7-4.); *Superbalife, Int'l v. Powerpay*, 2008 WL 4559752, at \*2 (C.D.Cal.,2008) (Denying defendant's motion to dismiss for failure to comply with Local Rule 7-3); *Access Ins. Co. v. Peralta*, No. SACV15622JLSAJWX, 2015 WL 13036938, at \*1 (C.D. Cal. Oct. 13, 2015)(Striking Defendants motion to dismiss for failure to comply with Local Rule 7-3 and noting that "faxing a letter to opposing counsel fails to comply with the Rule's requirement that counsel "discuss *thoroughly*, *preferably in person*, the substance of the contemplated motion and any potential resolution." C.D. Cal. R. 7–3."); *R.H. v. Cty. of San Bernardino*, No. 5:18-CV-01232-JLS-KK, 2019 WL 10744836, at \*2 (C.D. Cal. Sept. 25, 2019)("because Defendants failed to comply with Local Rule 7-3, the Court STRIKES both Motions for Full or Partial Summary Judgment and vacates the September 27, 2019 hearing date.")  The Defendants also intentionally failed to comply with <u>Fed. R. Civ. P. 26(a)(1)(C)</u> by not serving Plaintiff with their initial disclosures at or within 14 days after the parties' April 26, 2024, <u>Rule 26(f)</u> conference. (Plaintiffs' Decl., at ¶ 8.)

MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.     LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*  In reviewing a Fed. R. Civ. P. 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, when accepted as true, " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).  "A pro se complaint must be 'liberally construed,' since 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)); same *Sanders v. Legacy Emanuel Medical Center*, 676 Fed.Appx. 709, 710 (C.A.9 (Or.), 2017)(citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

MEMORANDUM OF POINTS AND AUTHORITIES

1  (noting obligation to construe pro se pleadings liberally)).

2      Any ambiguities can reasonably be clarified under modern rules of

3  discovery. See *RHUB Communications, Inc. v. Karon*, 2018 WL 707596, at *3

4  (N.D.Cal., 2018)(citing *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612,

5  616 (1993))(holding that "[a] demurrer for uncertainty is strictly construed, even

6  where a complaint is in some respects uncertain, because ambiguities can be

7  clarified under modern discovery procedures."); *Castillo v. Norton*, 219 F.R.D.

8  155, 163 (D.Ariz.,2003)("If the moving party could obtain the missing detail

9  through discovery, the motion should be denied.")(citing *Davison v. Santa Barbara*

10  *High School District,* 48 F.Supp.2d 1225, 1228 (C.D.Cal.1998); *Beery v. Hitachi*

11  *Home Electronics (America) Inc*., 157 F.R.D. 477, 480 (C.D. Cal. 1993)("Where

12  the information sought is available through the discovery process, a Rule 12(e)

13  motion should be denied").

14      If a court dismisses a complaint, it should give leave to amend unless the

15  "pleading could not possibly be cured by the allegation of other facts." *United*

16  *States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016);

17  *McMullen v. Fluor Corp*., 81 Fed.Appx. 197, 199, 2003 WL 22700954, at *1

18  (C.A.9 (Cal.),2003)(citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9

19  L.Ed.2d 222 (1962)("Absent prejudice, or a strong showing of any of the

20  remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of

21  granting leave to amend.")  "The burden of proof regarding a Rule 12(b)(6) motion

22  rests on the movant." *Lietz v. Department of Veterans Affairs*, 2023 WL 5350844,

23  at *3 (D.Idaho, 2023),citing  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.

24  2005).

25  //

26  //

# IV.   ARGUMENT

### A.  Plaintiff Sufficiently States A Claim Under The EMTALA And California Health & Safety Code § 1317.

To overcome a <u>Rule 12(b)(6)</u> motion to dismiss under EMTALA, a plaintiff must allege that: 1) plaintiff went to defendant's emergency room; 2) with an emergency medical condition; and either the hospital 3) did not adequately screen him or her to determine whether he or she had such a condition, or 4) discharged or transferred him or her prior to stabilization of the medical condition. *Arrington v. Wong*, 19 F.Supp.2d 1151, 1154 (D.Hawai i,1998)(citing *Ruiz v. Kepler,* 832 F.Supp. 1444, 1447 (D.N.M.1993); *Huckaby v. East Ala. Medical Ctr.,* 830 F.Supp. 1399, 1402 (M.D.Ala.1993).  "The elements of a civil claim for failure to stabilize include the following: (1) the hospital had actual knowledge that a patient was suffering from an "emergency medical condition"; and (2) did not, within the staff and facilities available at the hospital, provide for necessary stabilizing treatment before transfer or discharge, i.e., the transfer or discharge was not medically reasonable under the circumstances; and (3) the patient suffered personal harm as a direct result.  *Barris v. Cnty. of Los Angeles*, 20 Cal.4th 101, 110 (Cal., 1999.)

A plaintiff can also overcome a motion to dismiss under the EMTALA by showing that he or she received a disparate treatment medical screening, *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 994 (9th Cir. 2001)(citing *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1256 (9th Cir. 2001); or "[e]evidence that a hospital did not follow its own screening procedures resulting in a disparate treatment medical screening." Id. at *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 994 (9th Cir. 2001))(quoting *Battle v. Mem. Hosp.*, 228 F.3d 544, 558 (5th Cir. 2000)). <u>42 USC § 1395dd(e)(2)</u> applies to participating hospitals.  There is an exception to the application to inpatients "requiring that admission of a patient as an inpatient must

be done in "good faith" in order to satisfy the special requirements under EMTALA." <u>42 C.F.R. § 489.24 (d)(2)(i)</u>.  Like Plaintiff here, a patient can spend several days and nights in a hospital without ever being formally admitted and would be treated as an 'outpatient.' See e.g., *Barrows v. Burwell*, 777 F.3d 106, 109 (2d Cir. 2015).

<u>Health and Safety Code § 1317</u> states in relevant part that: Emergency services and care shall be provided to any person requesting the services or care, … for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when the health facility has appropriate facilities and qualified personnel available to provide the services or care.) *George v. Sonoma Cnty. Sheriff's Dept*., 732 F.Supp.2d 922, 944 (N.D.Cal., 2010)(citing <u>H & S Code § 1317(a))</u>.

The EMTALA defines the term "emergency medical condition" as meaning "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in ... [¶] ... placing the health of the individual ... in serious jeopardy, [¶] ... serious impairment to bodily functions, or [¶] ... serious dysfunction of any bodily organ or part." (42 U.S.C. § 1395dd(e)(1)(A).) Id. at *Barris v. Cnty. of Los Angeles*, at 109; see also <u>Health & Safety Code § 1317.1(b)</u>; same <u>Cal. Code. of Regs. § 97500.73</u>; <u>42 U.S.C. § 438.114</u>. Section <u>42 U.S.C. § 1395dd(e)(3)(A)</u> of the EMTALA defines "to stabilize" as meaning "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from the facility...." Id. at *Barris v. Cnty. of Los Angeles*, at 109.

1         <u>Health and Safety Code § 1278.5(i)</u> defines in relevant part that a "health

2    facility" means a facility defined under this chapter, including, but not limited to,

3    the facility's administrative personnel, employees, and medical staff.

4         The Plaintiff sufficiently alleges the above requirements by alleging in her

5    FAC that Defendant KFH is a health facility and a participating hospital that entered

6    into a Medicare provider agreement (FAC, Dkt. 1 at SOF ¶ 18; Plaintiffs' Decl., at ¶

7    10); that Defendant KFH owned, maintained, and operated an emergency

8    department and health facility to provide emergency services to the public (FAC,

9    Dkt. 1 at  SOF ¶ 58); that Defendant KFH emergency room and hospital had

10   appropriate facilities and qualified personnel available to provide emergency

11   services and care (FAC, Dkt. 1 at  SOF ¶ 58); that Defendant KFH, DO, LIN, and

12   RUIZ were a licensed physician, health facility, and a participating hospital with an

13   emergency department doing business with, for, on behalf of, and with the

14   authorization of Defendant KFH (FAC, Dkt. 1 at SOF  ¶ 9, ¶ 10, ¶ 11, ¶ 18); that she

15   went to Defendants Downey emergency room and requested medical care,

16   examination, treatment, and stabilization for her emergency medical conditions and

17   symptoms (FAC, Dkt. 1 at SOF  ¶ 19); that she was suffering from acute and serious

18   medical conditions and symptoms such as high blood pressure, elevated and

19   abnormal Troponin and Creatine Phosphokinase levels, and a 10 out of 10 pain level

20   (FAC, Dkt. 1 at  SOF ¶ 19; Plaintiffs' Decl., at ¶ 11); that her Doctor told her that

21   her lab results indicates that she hand unsafe thickening of blood in her body, that

22   she was retaining body fluid, may have an infection or unidentified diseases, and

23   was at risk of suffering a heart attack or stroke (FAC, Dkt. 1 at  SOF ¶ 19); that she

24   had emergency medical conditions threatening serious injury, illness, and danger to

25   her life (FAC, Dkt. 1 at  SOF ¶ 19).

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff also alleges in her FAC that the Defendants admitted her to the hospital as an observation patient and in bad faith with no intention on providing treatment or adequate treatment to stabilize her emergency medical conditions or symptoms (FAC, Dkt. 1 at  SOF ¶ 26); that Defendants DO, LIN, KFH, and RUIZ knew, documented, and/or diagnosed Plaintiff with having chronic rheumatologic diseases, and serious medical conditions such as shortening of breath, fatigue, chest pain and tightening, elevated inflammation, elevated blood pressure, elevated Troponin levels, elevated Creatine Phosphokinase levels, and elevated or abnormal white and red blood count or levels (FAC, Dkt. 1 at  SOF ¶ 19, ¶ 23, ¶ 32, ¶ 43); that Defendants DO, LIN, KFH, and RUIZ refused to and did not provide her with an appropriate medical screening by ignoring her lab results and by not performing any physician medical exam to treat, identify, stabilize, or rule out the serious and life threatening autoimmune diseases that Plaintiff had but was not aware of until she receive emergency medical services at the Kaiser Anaheim hospital emergency medical following the Defendant inappropriate discharge from the Downey emergency department (FAC, Dkt. 1 at  SOF ¶ 23, ¶ 32, ¶ 41, ¶ 46, ¶ 47); that Defendants KFH, DO, and LIN, delayed, refused, and denied Plaintiff immediate emergency care and treatment (FAC, Dkt. 1 at  SOF ¶ 23, ¶ 25, ¶ 32); that Defendants KFH, DO, LIN, RUIZ, FLORES, and CAMPBELL engaged in conduct that provided her with disparate medical care, treatment, and screening (FAC, Dkt. 1 at  SOF ¶ 23, ¶ 32, ¶ 46); that Defendant KFH emergency room and hospital had appropriate facilities and qualified personnel available to provide emergency services and care and that the Defendants failed to stabilize her emergency medical conditions but improperly discharge her from the emergency room on December 1, 2022 and December 3, 2022 (FAC, Dkt. 1 at SOF ¶ 26, ¶ 32, ¶ 39, ¶ 41, ¶ 42, ¶ 43, ¶ 58; Plaintiffs' Decl., at ¶ 12); that her health conditions got worse as a result or

proximate cause of the inappropriate discharge which required her to return to another emergency department (FAC, Dkt. 1 at  SOF  ¶ 26, ¶ 42); that Defendants KFH, DO, RUIZ, LIN, and FLORES, and each of them failed to and did not comply with Kaiser Foundation Hospitals' EMTALA Policy and procedures resulting in a reckless disregard/disparate treatment medical screening of Plaintiff and her serious health condition causing her harms (FAC, Dkt. 1 at SOF ¶ 23, ¶ 32, ¶ 44, ¶ 46.)

Plaintiff's factual allegations are sufficient to survive the Defendants Motion. *Munoz v. Watsonville Cmty. Hosp.*, No. 15-cv-00932-BLF, 2017 WL 363330, at *5–6 (N.D. Cal. Jan. 25, 2017)(allegation that the patient had severe pain, that the hospital diagnosed her as having severe pain, and that the hospital provided drugs that did not stabilize her pain and then discharged her, pleaded an EMTALA failure-to stabilize claim); *Gutierrez v. Santa Rosa Mem'l Hosp.*, No. 16-cv-02645-SI, 2016 WL 5930587, at *3 (N.D. Cal. Oct. 12, 2016)(even if the hospital performed numerous tests on the patient, allegations that it ignored the results of the tests and discharged the patient without stabilizing her emergency medical conditions pleaded an EMTALA failure-to-stabilize claim); *Sanders v. Legacy Emanuel Medical Center*, 676 Fed.Appx. 709, 710 (C.A.9 (Or.), 2017) (Sanders alleged facts showing that he had received a different examination than would have been offered to other patients presenting similar symptoms. Sanders also alleged that as a result of the disparate screening, the hospital failed to identify an emergency medical condition and he therefore suffered harm. Assuming these allegations are true, the allegations in the First Amended Complaint were sufficient to survive a motion to dismiss.), citing *Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1255–56 (9th Cir. 2001)(under EMTALA "the touchstone is whether ... the procedure is designed to identify an emergency medical condition, that is manifested by acute and severe symptoms[,]" which is determined by whether an examination is comparable to that "offered to other

MEMORANDUM OF POINTS AND AUTHORITIES

patients presenting similar symptoms...."); *Thornton v. Sw. Detroit Hosp*., 895 F.2d. 1131, 1135 (6th Cir. 1990) ("Hospitals may not circumvent the requirements of [EMTALA] merely by admitting an emergency room patient to the hospital, then immediately discharging that patient."); *Moses v. Providence Hosp. & Med. Ctrs., Inc*., 561 F.3d 573, 582 (6th Cir. 2009)(Thus, EMTALA requires a hospital to treat a patient with an emergency condition in such a way that, upon the patient's release, no further deterioration of the condition is likely."); *Crawford v. Kaiser Foundation Health Plan*, 395 F.Supp.3d 1279, 1290 (N.D.Cal., 2019)(citing *Dicioccio v. Chung*, 232 F. Supp. 3d 690-91 (E.D. Pa. 2017)("whether the care [plaintiff] received in observation was substantially similar to the care he would have received had he been admitted as an inpatient" presents "at least a general factual dispute").

The Plaintiff's high blood pressure, elevated and abnormal Troponin and Creatine Phosphokinase levels constitutes emergency medical conditions threatening serious injury, illness, and danger to her life and organs. See e.g., *Henderson v. Colvin*, 2016 WL 1180139, at *3 (C.D.Cal., 2016) (accepting that normal creatine kinase values for a woman are usually between 24 and 173 U/L and that creatine kinase levels ranging from 400 U/L to over 2,000 U/L  are "chronically elevated levels of creatine kinase (CK) and c-reactive protein" indicating muscle damage.); *MacLeod v. U.S*., 1994 WL 860798, at *6 (C.D.Cal.,1994) (admitting that blood in the urine and an elevated creatine phosphokinase "CPK," indicating substantial muscle damage); *Carrion v. United States*, 2016 WL 4087104, at *1 (D.Nev., 2016) (noting that elevated levels of creatine kinase, indicating potential muscle injury.); *Meador v. Hammer*, 2015 WL 1238363, at *7 (E.D.Cal.,2015) (Indications of a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of

MEMORANDUM OF POINTS AND AUTHORITIES

a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."); *Greenlee v. Astrue*, 2012 WL 2192277, at \*6 (D.Or.,2012)(Plaintiff sought treatment at an emergency room on November 9, 2009, with complaints of chest pain and shortness of breath. She had mentioned these symptoms during an appointment with another doctor that day, and was advised to go to the emergency room after an elevated troponin-T test.); *Gomez v. Ladan*, 2024 WL 402810, at \*9 (E.D.Cal., 2024)(admitting that high blood pressure can cause "a stroke and death."); *United States v. Sanders*, 2021 WL 38174, at \*3 (E.D.Cal., 2021)( The American Heart Association guidelines for blood pressure categories indicate "high blood pressure (hypertension) stage 2" as blood pressure readings of either "140 or higher systolic or 90 or higher diastolic."); *Villaverde v. Aranas*, 2022 WL 943067, at \*10 (D.Nev., 2022), citing *Broadus v. Clark Cty. Jail*, No. 2:04-cv-0294-RCJ-PAL, 2007 WL 9728878, at \*4 (D. Nev. Jan. 19, 2007) (explaining that hypertension is a serious medical need because if left untreated, it "will result in substantial pain and suffering and can be life threatening when severe"); *Hernandez v. Constable*, 2022 WL 1241192, at \*10 (E.D.Cal., 2022) (Plaintiff was being treated by a doctor for his high blood pressure and states that he suffered pain and dizziness due to the delay in his medication. This evidence is sufficient to create an issue of fact that plaintiff suffered harm as the result of defendants' conduct.);  *Mathison v. Moats*, 812 F.3d 594, 596 (C.A.7 (Ill.), 2016) (noting that the range in a healthy persons troponin level is "zero to .07 ng/ml (nanograms per milliliter)," and that Blood contains an enzyme called troponin; an elevated level of troponin signifies damage to the heart muscle.); *Hairston v. Negron*, 557 Fed.Appx. 884, 887 (C.A.11 (Fla.),2014) ("A blood test showed slightly elevated levels of the enzyme troponin, a common indicator of heart damage or disease."); *Prime Healthcare Services—Montclair,*

MEMORANDUM OF POINTS AND AUTHORITIES

*LLC v. Hargan*, 2018 WL 333862, at *4 (C.D.Cal., 2018)(acknowledging that elevated troponin levels possibly indicative of a heart attack); *Norfolk Cnty. Retirement System v. Community Health Systems, Inc*., 877 F.3d 687, 690 (C.A.6 (Tenn.), 2017) ("Elevated levels of troponin mean that the patient has suffered a heart attack or may suffer one soon."); *Grimes v. Riverman*, 2016 WL 281661, at *7 (E.D.Cal., 2016)(noting that elevated troponin levels would be consistent with an actual myocardial infarction."); *Aldis v. United States*, 2019 WL 6717602, at *12 (D.Hawaii, 2019)("Generally, when there is an injury to the heart, the myocardial tissue contracts and there will be an elevation in troponins."); *Bordelon v. Mindoro*, 2019 WL 1438853, at footnote 11 (N.D.Cal., 2019) ("Troponins are proteins released when the heart muscle has been damaged, which occurs during a heart attack."); *Estelle v.* Gamble, 429 U. S. at 106, 97 S.Ct. at 292 (1976) (holding that a defendants actions or inactions could be "sufficiently harmful to evidence deliberate indifference to serious medical needs.")

Plaintiff further sufficiently alleges in her FAC that she went to Defendants KFH and AGUDA Anaheim emergency department on or around March 7, 2023, because she was suffering from severe, intolerable, and uncontrolled abdominal pain and vomiting, fatigue, and shorten of breath. (FAC, Dkt. 1 at SOF ¶ 48); that she requested immediate medical treatment and to been immediately seen by a doctor which the medical staff denied. (Id.); that Defendant AGUDA and the other medical staff observed, knew of, and ignored the seriousness of Plaintiff's emergency medical condition, did not provide her with the requested or immediate medical care or treatment to control or reduce her pain, and made her wait in the lobby in severe and uncontrollable pain for about 45 minutes.  (FAC, Dkt. 1 at SOF ¶ 48, 49); that Defendant AGUDA is a licensed registered nurse (FAC, Dkt. 1 at SOF ¶ 18); that Defendant AGUDA and the other medical staff determined that Plaintiff was

MEMORANDUM OF POINTS AND AUTHORITIES

suffering from an emergency medical condition and provided her a red risk band identifying Plaintiff as an emergency need and high-risk patient. (FAC, Dkt. 1 at SOF ¶ 48); that Defendants AGUDA, KFH, and the other medical staff acted with intentional and deliberate indifference to Plaintiff's emergency medical conditions and failed to comply with Kaiser Foundation Hospitals' EMTALA Policy and procedures by delaying and unreasonably delaying the examination and treatment of Plaintiff's emergency medical conditions causing her harms (FAC, Dkt. 1 at SOF ¶ 48; 56).  Plaintiff is not attempting to sue Defendants DO, LIN, RUIZ, FLORES, or AGUDA directly under the EMTALA or Health and Safety Code § 1317(a), but their intended and unlawful acts, omissions, and conduct are alleged and cited here for context.

**B.  Plaintiff Sufficiently States A Claim For Discrimination Under The Unruh Civil Rights Act, Cal. Civil Code § 51; Cal. Civil Code § 54, § 54.1; & Health and Safety Code § 1317(b)).**

"To succeed on an Unruh Act claim Plaintiff must prove: (1) Defendants denied, incited a denial of, discriminated, or made a distinction that denied her full and equal accommodations, advantages, facilities, privileges, or services of their business establishment; (2) that a substantial motivating reason for Defendants' conduct was Plaintiff's protected status or perception of Plaintiff's protected status; (3) Plaintiff was harmed; and (4) Defendants' conduct was a substantial factor in causing Plaintiff's harm." *Ryan v. Professional Disc Golf Association*, 2023 WL 3378469, at *5 (E.D.Cal., 2023) (citing Jud. Council of Cal. Civil Jury Instructions, CACI No. 3060 Unruh Civil Rights Act—Essential Factual Elements) (2022)); Cal. Civ. Code § 51(b); see also, *Johnson v. Mol*, 2011 WL 4405121, at *3 (E.D.Cal.,2011).  Additionally, any violation of the ADA necessarily constitutes a violation of the Unruh Civil Rights Act. Id. at *Johnson* at *3 (quoting Cal. Civ.

Code § 51(f)); *Munson v. Del Taco, Inc.,* 46 Cal.4th 661, 664, 94 Cal.Rptr.3d 685, 208 P.3d 623 (2009).

Cal. Civ. Code 54 and Cal. Civ. Code § 54.1(a)(1) provides that "individuals with disabilities or medical conditions have the same right as the general public to the full and free use" of "public places" and "shall be entitled to full and equal access" to "places to which the general public is invited." A violation of Section 54.1(a) [of the CDPA] does not require intent." *Hankins v. El Torito Restaurants, Inc.,* 63 Cal.App. 4th 510, 520, 74 Cal.Rptr.2d 684, f.n 4 (1998).

California Health and Safety Code § 1317 states in relevant part that: "In no event shall the provision of emergency services and care be based upon, or affected by, the person's preexisting medical condition, …., or any other characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code, …." *George v. Sonoma Cnty. Sheriff's Dept*., 732 F.Supp.2d 922, 944 (N.D.Cal., 2010)(citing Cal. H & S Code § 1317(b)).

The Plaintiff sufficiently alleging in her FAC that Defendant KFH is a business establishment, a place of public accommodation, and it maintains and operates an emergency department that provide emergency services to the public (FAC, Dkt. 1 at SOF ¶ 5, ¶ 58); that Defendants KFH, DO, LIN, and RUIZ are a health facility (FAC, Dkt. 1 at SOF ¶ 5, ¶ 8, ¶ 9, ¶ 10, ¶ 11, ¶ 58); that she is a person with physical disabilities and chronic diseases and medical conditions (FAC, Dkt. 1 at SOF ¶ 18); that Defendants DO, LIN, KFH, and RUIZ knew that Plaintiff was a patient with physical disabilities, preexisting chronic rheumatoid illnesses, and multiple and overlapping systemic autoimmune diseases (FAC, Dkt. 1 at SOF ¶ 18); that Defendants KFH, DO, LIN, FLORES, and RUIZ engaged in conduct discriminating against and denying her full and equal medical care, treatment, privileges, services, and medications (FAC, Dkt. 1 at SOF ¶ 20, ¶ 22, ¶

MEMORANDUM OF POINTS AND AUTHORITIES

31, ¶ 32, ¶ 39, ¶ 38, ¶ 46); that Defendants DO, LIN, KFH, RUIZ, and FLORES acted with deliberate indifference and discriminated against her as a motivating or substantial cause her disabilities and preexisting medical conditions (FAC, Dkt. 1 at SOF ¶ 22, ¶ 23, ¶ 31, ¶ 38, ¶ 39, ¶ 43, ¶ 47); that Defendants KFH, DO, LIN, RUIZ, and FLORES violated her rights under the ADA (FAC, Dkt. 1 at SOF ¶ 24, ¶ 33, ¶ 45); that Defendant LIN denied her medical care and treatment, engaged in discriminatory conduct, and acted with deliberate indifference against her medical needs and as a motivating or substantial cause her atheism/agnosticism beliefs or practices and lack of and rejection of his Christian religion beliefs/bible (FAC, Dkt. 1 at SOF ¶ 31, ¶ 32); that she informed Defendant LIN and that he was aware her atheism/agnosticism beliefs or practices and lack of and rejection of his Christian religion beliefs/bible (FAC, Dkt. 1 at SOF ¶ 28, ¶ 30, ¶ 31); and that she suffered harm as a proximate and substantial of the Defendants KFH, DO, LIN, RUIZ, and FLORES conduct (FAC, Dkt. 1 at SOF ¶ 23, ¶ 34, ¶ 38, ¶ 42, ¶ 44.)

Atheism and Agnosticism beliefs and practices constitutes a religion, and a reasonable jury could find that Plaintiff was discriminated or retaliated against for her refusal to read Defendant LIN's Christian bible or believe in Lin's religion. See, *Welsh v. United States*, 398 U.S. 333, 339-340 (1970)(reiterating that a belief in God or divine beings is not necessary to qualify as a religion; nontheistic beliefs can be religious within the meaning of the statute as long as they "occupy in the life of that individual 'a place parallel to that filled by . . . God' in traditionally religious persons."); *Martin v. Stoops Buick, Inc*., No. 1:14-cv-00298-RLY-DKL, 2016 WL 2989037, at *6 (S.D. Ind. May 24, 2016)(denying summary judgment for employer where a reasonable juror could find that plaintiff's termination was motivated by her refusal to continue reading the Bible with her manager); *Scott v. Montgomery Cnty. Sch. Bd*., 963 F. Supp. 2d 544, 553-57 (W.D. Va. 2013)(holding

MEMORANDUM OF POINTS AND AUTHORITIES

that a reasonable jury could find plaintiff's rejection of her supervisor's requests to join Bible study group, ….., or begin each day with prayer before work, resulted in negative performance evaluations and then the non-renewal of her contract, …); *Noyes v. Kelly Servs. Inc*., 488 F.3d 1163, 1168-69 (9th Cir. 2007) (The court ruled that while the employee did not adhere to a particular religion, the fact that she did not share the employer's religious beliefs was the basis for the alleged discrimination against her, and the evidence was sufficient to create an issue for trial); Cal. Penal Code § 422.56(g) & Cal. Ed. Code § 212.3 ("Religion" includes all aspects of religious beliefs, …. and practice and includes agnosticism and atheism); Cal. Civ. Code § 51(e)(4)("Religion" includes all aspects of religious belief, observance, and practice.); same Cal. Gov. Code § 12926(g).

## C.  Plaintiff Sufficiently States A Discrimination Claim Under California Health & Safety Code § 1278.5.

Health & Safety Code § 1278.5(b)(1)(A) provides in relevant part that "A health facility shall not discriminate or retaliate, in any manner, against a patient because that person has "Presented a grievance, complaint, or report to the facility, or the medical staff of the facility, ….""  The code also provides in relevant part that "Any type of discriminatory treatment of a patient by whom, or upon whose behalf, a grievance or complaint has been, ……, or received by a health facility administrator within 180 days of the filing of the grievance or complaint, shall raise a rebuttable presumption that the action was taken by the health facility in retaliation for the filing of the grievance or complaint Health & Safety Code § 1278.5(c).

//
//
//

MEMORANDUM OF POINTS AND AUTHORITIES

To establish a prima facie case for discrimination under section 1278.5, a plaintiff must show that he or she (1) presented a grievance, complaint, or report to the hospital or medical staff (2) regarding the quality of patient care and (3) the hospital discriminated against him or her for doing so. H & S Code § 1278.5(b)(1)).

The Plaintiff sufficiently alleging in her FAC that KFH and the other Defendants are a health facility as defined in Health and Safety Code § 1278.5(i) and that they own or operates a health facility or emergency room (FAC, Dkt. 1 at SOF ¶ 8, ¶ 9, ¶ 10, ¶ 11, ¶ 18); that she repeatedly reported and complained about her care and treatment to KFH and the other Defendants and their administrative staff (FAC, Dkt. 1 at SOF ¶ 21, ¶ 27, ¶ 29, ¶ 35, ¶ 38, ¶ 40); that KFH and the Defendants knew about her reports and complaints about her care and treatment (FAC, Dkt. 1 at SOF ¶ 21, ¶ 29, ¶ 36); and that KFH and the other Defendants engaged in discriminatory and retaliatory conduct and actions against her for her reports and complaints about her medical care (FAC, Dkt. 1 at SOF ¶ 39, ¶ 41). Plaintiff is not attempting to sue Defendants DO, LIN, RUIZ, or FLORES directly under H & S Code § 1278.5, however, their intended and unlawful acts, omissions, and conduct are alleged and cited here for context.

### D. Plaintiff Sufficiently States A Retaliation Claim Under California Health & Safety Code § 1278.5 And The EMTAL.

To establish a prima facie case for retaliation under Cal. Health & Safety Code § 1278.5, a plaintiff must show that he or she (1) presented a grievance, complaint, or report to the hospital or medical staff (2) regarding the quality of patient care and (3) the health facility/hospital retaliated against him or her for doing so. *Faulkner v. Lucile Salter Packard Children's Hospital at Stanford*, 2023 WL 2351651, at *2 (N.D.Cal., 2023)(citing *Alborzi v. University of Southern California*, 269 Cal.Rptr.3d 295, 313, 55 Cal.App.5th 155, 178–79 (Cal.App. 2 Dist., 2020))

MEMORANDUM OF POINTS AND AUTHORITIES

(citing <u>Cal. Health & Safety Code § 1278.5(b)(1)</u>.  <u>Health & Safety Code § 1278.5(i)</u> defines in relevant part that a "health facility" means a facility defined under this chapter, including, but not limited to, the facility's administrative personnel, employees, and medical staff.  <u>Health & Safety Code § 1278.5</u> provides in relevant part that "Any type of discriminatory treatment of a patient by whom, or upon whose behalf, a grievance or complaint has been, ……, or received by a health facility administrator within 180 days of the filing of the grievance or complaint, shall raise a rebuttable presumption that the action was taken by the health facility in retaliation for the filing of the grievance or complaint. <u>Health & Safety Code § 1278.5(c)</u>.

The Plaintiff sufficiently alleging in her FAC that KFH and the other Defendants are a health facility as defined in <u>Health and Safety Code § 1278.5(i)</u> and that they own or operates a health facility or emergency room (FAC, Dkt. 1 at SOF ¶ 8, ¶ 9, ¶ 10, ¶ 11, ¶ 18); that she repeatedly reported and complained about her care and treatment to KFH and the other Defendants and their administrative staff (FAC, Dkt. 1 at SOF ¶ 21, ¶ 27, ¶ 29, ¶ 35, ¶ 38, ¶ 40); that KFH and the Defendants knew about her reports and complaints about her care and treatment (FAC, Dkt. 1 at SOF ¶ 21, ¶ 29, ¶ 36); and that KFH and the other Defendants retaliated against her (such as retaliatory discharges days after Plaintiffs complaint and reports, poor medical care and treatment, an assault and battery, discontinuance and denial of her medications, and a retaliatory order for a surgical procedure) for her reports and complaints about her medical care (FAC, Dkt. 1 at SOF ¶ 21, ¶  22, ¶ 28, ¶  30, ¶ 36, ¶ 38, ¶ 39, ¶ 41); and that Defendants conduct caused her harm (FAC, Dkt. 1 at ¶ 31, ¶ 33, ¶ 34, ¶ 37, ¶ 42, ¶ 44, ¶ 45.)  Plaintiff is not attempting to sue Defendants DO, LIN, RUIZ, CAMPBELL, or FLORES directly under the EMTALA or <u>H & S Code § 1278.5</u>, however, their intended and unlawful acts, omissions, and conduct are alleged and cited here for context.

MEMORANDUM OF POINTS AND AUTHORITIES

### E. __Plaintiff Sufficiently States A Claim For Assault & Battery.__

The elements of a cause of action for assault are: "(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *Nixon in Interest of Moore v. Buck*, 2019 WL 6620504, at *5 (C.D.Cal., 2019)(citing *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013)).  To establish a claim of battery under California law, a plaintiff must prove that: (1) the defendant touched the plaintiff with the intent to harm or offend him, (2) the plaintiff did not consent to the touching, and (3) the plaintiff was harmed or offended by defendant's conduct. *Rhodes v. Placer Cnty*., No. 2:09-CV-00489 MCE, 2011 WL 1302240, at *9 (E.D. Cal. Mar. 31, 2011), report and recommendation adopted, No. 2:09-CV-00489-MCE, 2011 WL 1739914 (E.D. Cal. May 4, 2011)(citing *Boyd v. City of Oakland,* 458 F.Supp.2d 1015, 1051–52 (N.D.Cal.2006)).

Cal. Civ. Code § 43 provides in relevant part that "Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, and from injury to his personal relations. The Court in *Davis v. Kissinger* noted that Cal. Civ. Code § 43 "codifies causes of action for assault, battery, and invasion of privacy" and denied summary judgment on state law claims, including those under that section. See *Davis v. Kissinger,* 2009 WL 2043899, No. CIV S–04–0878 GEB DAD P, at *8 (E.D.Cal. July 14, 2009)(not reported.)

MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Plaintiff sufficiently alleges in her FAC that the Defendants engaged in offensive and harmful physical contact and touching her and without her consent (FAC, Dkt. 1 at SOF ¶ 36, ¶ 50, ¶ 51); that the Defendants intended to cause violent, harmful, and offensive contact against her (FAC, Dkt. 1 at SOF ¶ 28, ¶ 31, ¶ 36, ¶ 51); that she reasonably believed that the Defendants would use their abilities to or was about to carry out the offensive and violent acts and touching against her (FAC, Dkt. 1 at SOF ¶ 34, ¶ 36, ¶ 51, ¶ 95); and that she was offended and harmed as a substantial or direct cause of the Defendants conduct. (FAC, Dkt. 1 at SOF ¶ 28, ¶ 34, ¶ 36, ¶ 37, ¶ 50, ¶ 51, ¶ 56). See also, *IVAN GUTZALENKO, et al., Plaintiffs, v. CITY OF RICHMOND, et al., Defendants*., 2024 WL 1141689, at *7 (N.D.Cal., 2024)(denying summary judgement on claims for assault and battery and noting that "Providing medical treatment to a person without their consent constitutes a battery."), citing *Rainer v. Community Memorial Hospital*, 18 Cal. App. 3d 240, 255 (1971); Same *Gutzalenko v. City of Richmond*, 2024 WL 1141689, at *7 (N.D.Cal., 2024)(deny motion to dismiss assault and battery claim and noting "Providing medical treatment to a person without their consent constitutes a battery."); *Shuler v. Garrett*, 743 F.3d 170, 172 (C.A.6 (Tenn.), 2014)("Performance of an unauthorized procedure constitutes a medical battery."), citing *Blanchard v. Kellum,* 975 S.W.2d 522, 524 (Tenn.1998); *Cary v. Arrowsmith,* 777 S.W.2d 8, 21 (Tenn.Ct.App.1989)(suggesting medical battery is an intentional tort—medical malpractice, in contrast, sounds in negligence—and is a species of battery, "an unpermitted touching of the plaintiff by the defendant or by some object set in motion by the defendant."); *Rhodes v. Placer Cnty*., 2011 WL 1302240, at *11 (E.D.Cal.,2011)(Accordingly, as to moving defendant Fakhri, the allegations within the SAC are sufficient to support a claim that he violated California Civil Code § 52.1 by injecting plaintiff against her wishes.)

MEMORANDUM OF POINTS AND AUTHORITIES

**F.  <u>Plaintiff Sufficiently States A Claim Under The Tom Bane Act.</u>**

To prevail on a Bane Act claim, a plaintiff must show that "the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Scott v. California Medical Group*, 2017 WL 10434016, at \*9 (C.D.Cal., 2017)(citing *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 955–56 (2012)); *Jones v. Kmart Corp*., 17 Cal. 4th 329, 334 (1998).  The Bane Act requires a specific intent to violate the plaintiff's protected rights. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).   In addition, "a reckless disregard for a person's" constitutional rights is evidence of a specific intent to deprive that person's rights. Id. at *Reese v. County of Sacramento*, 888 F.3d at 1045. A plaintiff can also show that the defendants acted with deliberate indifference, which requires "a purposeful act or failure to respond to a plaintiff's possible medical need." Id. at Scott, at \*9 (citing *Atayde v. Napa State Hosp.*, No. 16-CV-00398-DAD-SAB, 2016 WL 4943959, at \*8 (E.D. Cal. Sept. 16, 2016)(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Cal. Civ. Code § 52.1 is independent of Cal. Civ. Code § 51.7, (see Civil Code § 52.1(h)), it does not require any showing of actual intent to discriminate, and a defendant is liable if he or she interfered with the plaintiffs constitutional rights by the requisite threats, intimidation, or coercion. " See *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841-843 (Cal. 2004). Cal. Civ. Code § 52.1 also does not require Plaintiff to plead violence or threat of violence. See *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept*., 387 F.Supp.2d 1084, 1103 (N.D.Cal., 2005) (acknowledging that § 52.1 does not by its terms require violence or threat of violence.), referencing *Whitworth v. City of Sonoma*, 2004 WL 2106606, at \*6

MEMORANDUM OF POINTS AND AUTHORITIES

(Cal.App. 1 Dist.,2004) (Unpublished) (But violence, or the threat of violence, is not a prerequisite to stating a cause of action based on the Bane Act. This is recognized by our Supreme Court, which has characterized section 52.1 as requiring only "an attempted or completed act of interference with a legal right, accompanied by a form of coercion ."), citing *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844, 949 P.2d 941.

The Plaintiff sufficiently alleging in her FAC that that Defendants DO, LIN, FLORES, CAMPBELL, and AGUDA intentionally violated and interfered with and attempted to violate and interfere with her specific rights, including her rights to make reports and complaints about her care and treatment and to receive or seek medical care, treatment, and service free from discrimination, retaliation, bodily restraint or harm, personal insult, abuse, and from injury to her personal relations. (FAC, Dkt. 1 at SOF ¶ 24, ¶ 33, ¶ 45, ¶ 60, ¶ 61); that they used pressure, threatening, intimidating, and coercive **conduct** to purposely violate and infringe on her rights (FAC, Dkt. 1 at SOF ¶ 24, ¶ 33, ¶ 45, ¶ 60, ¶ 61); that Defendants LIN, CAMPBELL, and AGUDA used intentional offense and violent physical constraints and restraints for the purpose to control her movements; to scare, force, and/or prevent her from exercising her rights to refuse or have a lack of a Christian religion belief; to refuse medical care or treatment; to make complaints or reports about her medical care and treatment; and to cause her fear or intimidation of being harmed to force or deter her from asserting her rights (FAC, Dkt. 1 at SOF ¶ 28, ¶ 31, ¶ 36, ¶ 38, ¶ 50, ¶ 51); that the Defendants purposely failed to respond to and acted with deliberate indifference to her serious medical condition and health needs (FAC, Dkt. 1 at  ¶ 19, ¶ 20, ¶ 22, ¶ 23, ¶ 31, ¶ 32, ¶ 38, ¶ 43, ¶ 47, ¶ 48); and that she was harmed as a direct, proximate, or substantial cause of the Defendants conduct (FAC, Dkt. 1 at SOF ¶ 23, ¶ 34, ¶ 37, ¶ 38, ¶ 44, ¶ 56).

MEMORANDUM OF POINTS AND AUTHORITIES

### G. **Plaintiff Sufficiently States A Claim For Negligence.**

To make out a claim for negligence, a plaintiff must plead four elements: duty, breach, causation, and damages. See *Estate of Wilson by and through Jackson v. Cnty. of San Diego*, 2022 WL 789127, at *25 (S.D.Cal., 2022) (citing *Marlene F. v. Affiliated Psych. Med. Clinic, Inc.*, 48 Cal. 3d 583, 588–89, 257 Cal.Rptr. 98, 770 P.2d 278 (1989)); see also *Elam v. College Park Hospital*, 183 Cal.Rptr. 156, 159, 132 Cal.App.3d 332, 338 (Cal.App. 4 Dist., 1982). The standard of medical care in a medical negligence case requires expert testimony and not testimony by Plaintiff to prove or disprove the performance of the defendants, unless the negligence is obvious to a layperson. See *Mayer v. Redix*, 2016 WL 11743217, at *9 (C.D.Cal., 2016), citing *Johnson v. Superior Court*, 143 Cal. App. 4th at 305 (2006)("Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson.)

Plaintiff sufficiently alleging in her FAC that Defendants KFH, THOMAS, SATHAS, and AGUDA, and each of them owed Plaintiff a reasonable and ordinary duty of care to use their nursing skills and roles diligently to provide Plaintiff with a safe, adequate, and non-discriminatory medical care; to properly operate and monitor Plaintiff's IV catheter; to prevent or lessen injuries or suffering to Plaintiff from the IV catheter; to make sure Plaintiff is comfortable and free of harms; to safely and diligently use and insert needles and catheters in Plaintiff's body; and to properly monitor and coordinate with one another about Plaintiff's care and treatment and the medical equipment and medication used to treat and care for Plaintiff. (FAC, Dkt. 1 at  SOF ¶ 55, ¶ 100); that Defendants KFH, THOMAS, SATHAS, and AGUDA intentionally, willfully, and with

MEMORANDUM OF POINTS AND AUTHORITIES

disregard to Plaintiff's safety, health, wellbeing, and medical care and treatment, and engaged in conduct breaching their duties of care to Plaintiff (FAC, Dkt. 1 at SOF ¶ 48, ¶ 49, ¶ 50, ¶ 51, ¶ 53, ¶ 54, ¶ 56, ¶ 100); and as a direct or proximate cause of the breach, she suffered, panic, shock, pain, swelling, hemorrhaging, the unnecessary loss of blood, infiltration, damaged tissue, bruises to her left arm; and/or an assault and battery (FAC, Dkt. 1 at SOF ¶ 56, ¶ 100).

Plaintiff also allege that Defendants THOMAS, SATHAS, and AGUDA were acting for his, her, or its own personal account and as registered nurses, operators, agents, employees, trustees, for each other and for Defendant KFH, and as such was acting within the scope, course, and purpose of such authority, services, agency, registered nurses, operators, agents, employees, or trustees, (FAC, Dkt. 1 at SOF, ¶ 56, ¶ 101); and that Defendant KFH is the principle for Defendants THOMAS, SATHAS, and AGUDA, and could have, but failed to train or supervise or properly train or supervise Defendants THOMAS, SATHAS, and AGUDA to prevent injuries and negligent conduct or inactions against Plaintiff during the medical treatment and care at the Anaheim emergency room (FAC, Dkt. 1 at SOF, ¶ 57, ¶ 101).

## V. <u>CONCLUSION</u>

For the reasons stated above, this Court should deny the Defendants Motion to Dismiss.  Although Plaintiff's FAC clearly satisfy the fair notice requirements in <u>Fed. R. Civ. P. 8</u>, and any amended complaint would not be futile at this time, she request to file a Second Amended Complaint to cure any curable deficiencies in her FAC should the Court find such deficiencies. (Plaintiffs' Decl., at ¶ 13.)

Dated: June 3, 2024,                    Respectfully submitted,

_____
Dominique Daniels
Plaintiff in Pro Per

MEMORANDUM OF POINTS AND AUTHORITIES